**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Israel ALVAREZ, Sr., Monolo Alvarez, Rafael Alvarez, Harry Bosquet, Jose Antonio Leyva, Israel Alvarez, Jr., Defendants-Appellants.**

**No. 82–5780.**

United States Court of Appeals, Eleventh Circuit.

July 2, 1984.

---

Raymond J. Takiff, Coconut Grove, Fla., for Bosquet.

Frank A. Rubino, Coconut Grove, Fla., Marc S. Nurik, Nurik, O'Donnell & Lazarus, Fort Lauderdale, Fla., for Israel Alva-

rez, Jr., Rafael Alvarez, Jose A. Leyva and Bosquet.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Norman Moscowitz, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, TJOFLAT and HENDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

Appellants challenge their convictions and sentences stemming from their involvement in a scheme to import controlled substances. Following a jury trial before the District Court for the Southern District of Florida, Israel Alvarez Sr., Israel Alvarez Jr., Manolo Alvarez, Rafael Alvarez, Jose Antonio Leyva and Harry Bosquet were found guilty of conspiracy to possess with the intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 846 (Count I). Israel Alvarez Sr. and Manolo Alvarez were also found guilty of aiding and abetting in the utterance of counterfeit United States currency, in violation of 18 U.S.C. § 472 (Count VII).

Israel Alvarez Sr. was sentenced to a term of fifteen years and a $15,000.00 fine on Count I and a concurrent term of five years on Count VII. Israel Alvarez Jr. received an indeterminate sentence pursuant to the provisions of the Federal Youth Corrections Act, 18 U.S.C. 5010(b). Defendant Manolo Alvarez was sentenced to a term of six years on Count I and a concurrent term of three years on Count VII. Rafael Alvarez, Jose Antonio Leyva and Harry Bosquet received sentences of ten, eight and four years respectively on Count I.

On July 23, 1981, confidential informant Guiseppi Cianci, who had previously engaged in illegal drug transactions and had agreed to assist the Drug Enforcement Agency (DEA) in an undercover reverse sting operation, and Juan Perez, a special

agent of the DEA, met with Reginaldo Rodriguez, a drug trafficker in both Colombia and the United States. Cianci negotiated to sell Rodriguez 22,000 pounds of marijuana and seven and one-half kilograms of cocaine. It was agreed that Rodriguez would inspect the marijuana the following day and that he would later furnish the address for the delivery of the marijuana. This transaction was never consummated, however, because Rodriguez returned to Colombia on the next day, July 24, 1981.

On July 24, 1981, Perez and Cianci met Israel Alvarez Sr. and Leo Pinalva. Israel Alvarez Sr., who stated that he had worked with Rodriguez, asked the government agents to arrange for the sale of the marijuana at a reduced price and requested a sample bale. Before they parted, Israel Alvarez Sr. gave Perez and Cianci a telephone number and told them that in the future they were to avoid Rodriguez and deal with him exclusively.

On July 25, 1981, Perez and Cianci went to the residence of Israel Alvarez Jr. Israel Alvarez Jr. asked if they had brought the sample and Perez replied that it was in the car.

At about 6:00 p.m. Perez, Cianci, Israel Alvarez Sr. and Israel Alvarez Jr. went to another house. When they arrived, they found Rafael Alvarez and Harry Bosquet standing outside. Israel Alvarez Sr. asked Perez for the keys to his car so that Bosquet could get the sample. Perez gave Bosquet the keys and Bosquet pulled the agent's car up to the house next door, removed a box from the back seat, and carried it into the house. According to Perez, the contents of the box gave off a distinct odor of marijuana.

While Rafael Alvarez, Israel Alvarez Sr., Perez, Cianci and others stood outside, Israel Alvarez Jr. produced pictures of an airplane. In answer to Perez's question, Israel Alvarez Jr. said that the plane had been purchased by the family for their smuggling operation.

Perez remarked to Israel Alvarez Jr. that there were too many persons going in and out of the house. Israel Alvarez Sr. told Perez not to worry about it, noting that "they all work for me."

Later that day, Perez and Cianci met again with Israel Alvarez Sr., Israel Alvarez Jr. and Manolo Alvarez and proceeded to the house where they had previously delivered the marijuana. At their meeting place, they saw Rafael Alvarez and Harry Bosquet leaning against a pick up truck with a shotgun between them.

After going into the residence, Israel Alvarez Sr. pointed to two piles of marijuana on the floor and said that sixty percent of the sample was waste. Israel Alvarez Jr. commented that the marijuana was of very poor quality. Israel Alvarez Sr. stated that the sample appeared to be Jamaican marijuana, an assessment Leo Pinalva disagreed with. Israel Alvarez Sr. stated his intention to borrow $100,000.00 from Manolo Alvarez for the down payment on the marijuana. Manolo Alvarez spoke of mixing the marijuana with 1,200 pounds of a higher grade marijuana to upgrade its quality.

The group then returned to the residence where they had first met. There they found Rafael Alvarez and Harry Bosquet still standing outside. Manolo Alvarez, Israel Alvarez Sr., Israel Alvarez Jr., Leo Pinalva, Cianci and Perez went inside. Israel Alvarez Sr. asked Perez and Cianci what had happened to the cocaine. Israel Alvarez Jr. inquired if they could get a sample. Leo Pinalva said that he wanted two kilograms out of the seven and a half kilograms that Perez and Cianci had available for sale. During this discussion, Rafael Alvarez and Harry Bosquet entered the house.

The next day, July 26, 1981, Perez and Cianci met Manolo Alvarez and Israel Alvarez Sr. at a restaurant in Hialeah. Israel Alvarez Sr. stated that he could obtain some counterfeit bills and that this counterfeit money could be placed between legitimate bills before the money was passed from the government team to its supplier. Pick up of the money was scheduled for the following morning.

Perez and Cianci met alone with Israel Alvarez Sr. the next day. After a short time, Jose Leyva and Julio Ravel arrived. Perez inquired as to why they were present and Ravel told him that they were waiting for the truck with the marijuana. When Jose Leyva asked the whereabouts of Rafael Alvarez, Israel Alvarez Sr. said that he had gone to find a place to store the marijuana.

Israel Alvarez Sr. subsequently instructed Perez and Leyva to exchange car keys so that Leyva could use Perez's car to pick up some money. He informed Perez that Rafael Alvarez would be bringing money.

A short time later Rafael Alvarez returned. Leyva went into his car and retrieved a blue cosmetic case from the trunk. Upon Perez's instruction, Leyva placed it into Perez's car.

The party then proceeded to Hialeah to await the arrival of the balance of the money. A few minutes after they arrived, Leyva drove up in Perez's rental car. After exchanging keys with Leyva, Perez and Cianci then went to their car. Two blue leather suitcases (one a cosmetics case) were in the back seat. Perez and Cianci then left the group, ostensibly to deliver the money to their supplier.

As Perez and Cianci travelled, they noticed that they were being followed by a vehicle occupied by Rafael Alvarez, Theresa Mirando, and two other persons. Perez sped to DEA headquarters. The suitcases were subsequently opened and found to be full of money, including $46,000.00 in counterfeit currency.

## I.

■ The appellants first complain that their convictions under Count I of the indictment, which charged them with conspiracy to distribute a quantity of cocaine *and* a quantity of marijuana, were legally defective. Specifically, they contend that the district court erred in failing to instruct the jury that it must find proof beyond a reasonable doubt of *both* a cocaine conspiracy and a marijuana conspiracy.

This argument mischaracterizes the nature of the charge. What the government alleged was not two separate conspiracies, but a single conspiracy with multiple objectives.

Count I does not manifest the error of duplicity—that is, the joining of two or more separate crimes in a single count of an indictment. *See, e.g., United States v. Goodman,* 285 F.2d 378, 379–80 (5th Cir.), *cert. denied,* 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389 (1961). Rather, Count I alleges only a single crime, conspiracy. As the Supreme Court stated in *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942):

> The allegation of a single count of a conspiracy to commit several crimes is not duplicitous, for "The conspiracy is the crime and that is one, however diverse its objects." ... A conspiracy is not the commission of the crime which it contemplates, and neither violates nor "arises under" the statute whose violation is its object ... The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute ...

*Id.* at 54, 63 S.Ct. at 102, 87 L.Ed. at 28–29. (Citations omitted.)

The district court did not err in not requiring the jury to consider whether there were two conspiracies.

## II.

The appellants' second ground of error is essentially an extension of the first and fails for much the same reason. They maintain that the evidence at the trial was insufficient to prove a conspiracy to possess with intent to distribute cocaine, and that the failure to prove this conspiracy obviates their convictions.

■ It is well-settled in this circuit that where a conspiracy has multiple objectives, a conviction will be upheld so long as the evidence is sufficient to show that the defendants agreed to accomplish at least one of the objectives. *United States v. James,* 528 F.2d 999, 1014 n. 20 (5th Cir.),

*cert. denied sub nom, Henry v. United States,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976), citing *United States v. Papadakis,* 510 F.2d 287, 297 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).[1] As noted, the conspiracy alleged here had two objectives: possession with intent to distribute cocaine and possession with intent to distribute marijuana. The appellants do not challenge the sufficiency of the proof as to the marijuana prong of the conspiracy. That, in effect, settles this issue. The fact that one aim of the conspiracy was proved was sufficient to sustain conviction for the conspiracy itself. *See Christiansen v. United States,* 52 F.2d 950 (5th Cir.1931).

### III.

Israel Alvarez Sr., Manolo Alvarez, Rafael Alvarez and Leyva next urge that even if their convictions under Count I are valid, the sentences imposed thereunder must be vacated. They contend that the verdict was ambiguous in that it did not specify the objective of the conspiracy for which they were convicted and as a result thereof they may well have been sentenced for a crime which was not properly a matter for consideration by the jury.

This argument directs attention to the disparities among the penalties for possession with intent to distribute cocaine and for possession with intent to distribute various amounts of marijuana.[2] The maximum sentence for an offense involving cocaine is fifteen years in prison, a fine of $25,000.00, or both. 21 U.S.C. § 841(b)(1)(A). The penalty for a marijuana conviction is a prison term of not more than five years, a fine not to exceed $15,000.00 or both. 21 U.S.C. § 841(b)(1)(B). Possession with intent to distribute more than one thousand pounds of marijuana carries a maximum sentence of fifteen

years and a fine of $125,000.00. 21 U.S.C. § 841(b)(6).

These four appellants were sentenced to terms in excess of five years. It is apparent, then, that they were sentenced either for conspiracy to possess cocaine or for conspiracy to possess more than one thousand pounds of marijuana.

The appellants claim that these sentences cannot stand because (a) there was insufficient evidence of a conspiracy to possess with intent to distribute cocaine, and (b) the indictment did not allege a conspiracy involving more than one thousand pounds of marijuana. Because it was impossible to ascertain from the general verdict either the substance or quantity upon which the jury based its result, they could only be sentenced for the least offense—that is, possession of less than one thousand pounds of marijuana for which the maximum penalty is five years.

The sufficiency of the evidence to prove a cocaine conspiracy is essentially irrelevant to this inquiry. Whether the evidence regarding cocaine was sufficient to warrant a conviction is different from whether the jury actually found from that evidence that the defendants were guilty of a cocaine conspiracy. In the absence of a special verdict to that effect, we cannot address the issue of sufficiency of the evidence.

In this posture, all we can say with certainty is that the jury believed the appellants to be guilty of a general conspiracy to possess with intent to distribute controlled substances, and that the district court then imposed sentences based upon its own belief as to the nature and quantity of the substances. As we have noted, the sentences obviously were imposed for a conspiracy to possess cocaine or a conspiracy to possess more than one thousand pounds of marijuana.

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

**2.** U.S.C. § 846 provides that conspiracy to commit an offense enumerated in 21 U.S.C. § 841 is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the conspiracy.

The fact that the jury returned verdicts for a simple conspiracy alone would call for sentences for the lesser included offense. The question is whether such a verdict authorizes the enhanced penalties either for possession of cocaine or possession of more than one thousand pounds of marijuana.

Because simple possession of marijuana is the lesser included offense, and there is no dispute as to the existence of a marijuana conspiracy, we may assume that the jury found these defendants guilty at least of a simple marijuana conspiracy. The problem is whether the indictment was so drawn as to support an enhanced penalty under 21 U.S.C. § 841(b)(6). The indictment here referred specifically to 21 U.S.C. § 841(a)(1), the "unlawful acts" section of 21 U.S.C. § 841 which proscribes certain conduct relating to controlled or counterfeit substances. That section is wholly separate from 21 U.S.C. 841(b), the "penalties" provision which is more detailed and enumerates, for sentencing purposes, specific considerations to be given to the type and quantity of the substances. The government asserts that since the indictment was wholly adequate for conviction under 21 U.S.C. § 841(a)(1) and since a trial judge may "exercise a wide discretion in the sources and types of evidence" considered in determining punishment, *United States v. Martinez*, 584 F.2d 749, 749–50 (5th Cir. 1978), quoting *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337, 1341 (1949), the enhanced penalty was appropriate here.

The former Fifth Circuit Court of Appeals previously considered a similar issue in the context of 18 U.S.C. § 659 which concerns the possession of goods stolen from an interstate shipment. *Packnett v. United States*, 503 F.2d 949 (5th Cir.1974). In that case, the appellant was charged generally with a violation of the statute. He attacked the failure of the indictment to include an allegation of value, noting that while the statutory definition of the offense makes all possession unlawful, it provides for gradations in punishment according to the value of the articles stolen. The

court held that the penalty provision of the statute makes value an element of the offense, and stated that in the absence of an allegation of value the indictment supported a sentence for the lesser offense enumerated in the statute but not for the greater offense. *Id.* at 950–51.

Likewise, in *Theriault v. United States*, 434 F.2d 212 (5th Cir.1970), *cert. denied*, 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961 (1973), the court, in connection with its consideration of 18 U.S.C. § 641, held that allegations of value are essential to charges resulting in enhanced penalties under the statute.

In *Theriault*, the appellant was convicted for violation of 18 U.S.C. § 751, escape from custody. Under 18 U.S.C. § 751, if the custody is for a felony offense, the maximum penalty is $5,000.00 and five years, but if it is for a misdemeanor offense, the sentence cannot exceed a fine of $1,000.00 and one year. The underlying convictions were for violations of 18 U.S.C. § 641, which ascribes penalties of $10,000.00 and ten years if the value of property stolen is more than $100.00, and $1,000.00 and one year if it is less than $100.00. The indictment did not contain any allegations of value. Nevertheless, the trial judge ruled as a matter of law that at the time of his escape the defendant was in custody on a charge of felony, and imposed an enhanced penalty.

The appellate court held that the underlying convictions could not be construed as felonies, because there was no allegation or proof that the value of the stolen property was greater than $100.00. In the absence of such an allegation of value the underlying convictions amounted only to misdemeanors. The court then reasoned that since the underlying convictions were only misdemeanors the escape conviction under 18 U.S.C. § 751 was also a misdemeanor, and the case was remanded for resentencing on the misdemeanor charge.

■ Lacking any definitive precedent in the area of drug violations, we look to the *Packnett* and *Theriault* decisions for guid-

ance and hold that the present indictment cannot properly serve as the basis for sentences in excess of the five years specified in 21 U.S.C. § 841(b)(1)(B). Since the quantity of the substance constitutes a critical element of the offense under 21 U.S.C. § 841(b)(6), and no quantity of marijuana was specifically alleged in the indictment, the enhanced sentences imposed pursuant to that provision are invalid.

We therefore vacate the judgment of the district court as to the convictions of Israel Alvarez, Sr., Manolo Alvarez, Rafael Alvarez and Leyva on Count I and remand for resentencing or, in the event the government does not consent to sentences under 21 U.S.C. § 841(b)(1)(B), for a new trial.

### IV.

Harry Bosquet challenges the sufficiency of the evidence to establish his guilt beyond a reasonable doubt. He says there was no evidence that he had any knowledge of a conspiracy to purchase cocaine, and that his involvement in the marijuana conspiracy is speculative at best.

■ In assessing the sufficiency of the evidence we consider whether viewing the evidence, together with all reasonable inferences, in the light most favorable to the government a reasonable jury could have concluded that the evidence established guilt beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, so long as a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982), *aff'd.* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ It is incumbent upon the government in conspiracy cases to demonstrate each defendant's individual participation in the conspiracy. *United States v. Blasco*, 702 F.2d 1315, 1330 (11th Cir.), *cert. denied sub nom, Jamardo v. United States,* ——

U.S. ——, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983). As applied to Bosquet, the government had to show not only that the conspiracy existed, but also that Bosquet had knowledge of the conspiracy and that he voluntarily became part of it. *United States v. Badolato*, 701 F.2d 915, 920 (11th Cir.1983). The requirement of knowledge refers simply to knowledge of the essential objective of the conspiracy—here, to violate the drug laws. *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir.), *cert. denied*, 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). The government did not have to prove that Bosquet knew all the details of the conspiracy, but only that he played a minor role in the operation. *Badolato*, 701 F.2d 915, 920.

■ The evidence plainly established the existence of a drug conspiracy. The defendants had agreed to purchase 22,000 pounds of marijuana for later resale. The essential question here is whether there was substantial evidence of Bosquet's involvement.

Bosquet was observed carrying a large box, which gave off a distinct odor of marijuana, into a house at the direction of Israel Alvarez Sr. Bosquet was later seen with Rafael Alvarez leaning against a vehicle in front of the same house; a shotgun was between them. Finally, Bosquet entered another residence and placed the shotgun against the wall at a time when other conspirators and the government team were discussing the drug transaction.

A reasonable jury could have concluded that the act of conveying the box of marijuana at the direction of Israel Alvarez Sr. and standing outside of the house with a shotgun nearby constituted acts in furtherance of the conspiracy. Moreover, we find it difficult to believe that Bosquet would have been permitted to remain in the room during the discussion of drug activities if he had been totally ignorant of the conspirators' purpose. Although each act, standing alone, might have been innocent, taken as a whole the evidence was more than adequate to sustain Bosquet's guilt beyond a reasonable doubt.

## V.

The appellants finally complain that they were deprived of a fair trial because of various statements made by the prosecutor in his closing argument to the jury. They charge improprieties in the prosecution making prejudicial references to the defendants and the evidence, expressing personal opinions about the merits of the case, suggesting that the government had evidence which it did not present and commenting on the defendants collectively rather than individually. We have reviewed the final argument of the prosecutor and find no merit to this assignment of error.

 At one point in his argument, the assistant district attorney referred to the defendants as "substantial drug dealers" and to the currency delivered as "illicit drug money." These remarks were characterizations based on evidence adduced at the trial, and the jury was in the best position to evaluate the accuracy of the characterizations. They were not improper. *See United States v. Capo*, 693 F.2d 1330, 1335 (11th Cir.), *cert. denied*, 460 U.S. 1092, 103 S.Ct. 1793, 76 L.Ed.2d 359 (1983); *United States v. Webb*, 463 F.2d 1324, 1328 (5th Cir.), *cert. denied*, 409 U.S. 986, 93 S.Ct. 338, 34 L.Ed.2d 251 (1972).

The prosecutor commented that the jury would have no difficulty finding the defendants guilty, that the evidence was overwhelming and that the jury should have no trouble deciding the truth. Such statements were simply an expression of opinion on the quality of the evidence and were not prejudicial.

The prosecutor commented that there were reasons why the government chose to put on certain witnesses as opposed to others, "reasons that you or no one involved in the case could possibly know." This statement was made in response to repeated rhetorical queries of the defendants' counsel as to why the government failed to call its confidential informant, Guiseppe Cianci, to the stand. In such context, the prosecutor's comment was not unfairly prejudicial to the defendants. *See United States v. Ivey*, 550 F.2d 243, 244 (5th Cir.), *cert. denied sub nom, Taglione v. United States*, 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977); *United States v. Henley*, 502 F.2d 585, 585–86 (5th Cir.1974).

The assistant district attorney made several collective references to the defendants and to their attorneys during the course of his argument. We cannot find any substantial harm to the rights of the defendants resulting from these remarks.

The convictions of Harry Bosquet and Israel Alvarez Jr. on Count I, as well as the convictions of Israel Alvarez Sr. and Manolo Alvarez on Count VII are AFFIRMED. The sentences of Israel Alvarez Sr., Manolo Alvarez, Rafael Alvarez and Jose Antonio Leyva on Count I are VACATED and REMANDED to the district court for proceedings consistent with this opinion.