**UNITED STATES of America, Appellee,**

**v.**

**William E. WOOD, a/k/a Steve Bishop, Appellant.**

**No. 86–2496.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Nov. 25, 1987.

Larry Byrd, Sarasota, Fla., for appellant.

Debra E. Herzog, St. Louis, Mo., for appellee.

Before ROSS,* Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

William E. Wood appeals from the district court's ** entry of judgment and sentence following a jury verdict of guilty on one count of conspiracy to distribute, and possess with intent to distribute, cocaine, 21 U.S.C. § 846, and one count of interstate travel in aid of a racketeering enterprise (ITAR), 18 U.S.C. § 1952. Wood received an enhanced twenty-year prison term and a $250,000 fine on the section 846 charge, and a concurrent five-year prison sentence and a $250,000 fine on the ITAR charge. Wood raises numerous issues on appeal. We reject Wood's assignments of error and affirm his conviction and sentence.

## I. FACTS.

Wood headed a cocaine distribution ring centered in Florida. In June 1985, Michael Stanton, Wood's accomplice, returned to

---

* The Honorable Donald R. Ross, active Judge of this court at the time this case was submitted, took senior status on June 13, 1987, before this opinion was filed.

** The Honorable John K. Regan, Senior District Judge, United States District Court for the Eastern District of Missouri, now deceased.

Florida from Renton, Missouri, where he had moved following five years employment in Wood's drug smuggling and distribution operation in Florida. Wood met with Stanton, delivered cocaine to him, and had him carry the cocaine back to Renton, Missouri.

Upon his return to Renton, Stanton was questioned by the police. Fearing a search of his home, he put the cocaine in a backpack, and asked his son and a playmate to hide the backpack for him in the woods. Stanton later retrieved the backpack and delivered it to Wood, who had flown to a nearby airport. After delivery, Wood discovered that some of the cocaine was missing. Although denying responsibility, Stanton resolved to find the missing cocaine. In late June of 1985, Stanton was arrested after threatening three local youths he determined had stolen Woods' missing cocaine. State and federal charges were brought against Stanton.

In May 1986, Stanton began cooperating with the government and disclosed Wood's role in the conspiracy, a role Wood later confirmed through several recorded telephone conversations with Stanton and Stanton's wife Mary. On July 30, 1986, Wood was detained by the U.S. Customs Service at the St. Petersburg-Clearwater Airport, while trying to pick up a jet airplane that he had bought with $1,085,000 in cash. Wood was arrested and charged with conspiracy to falsely register an aircraft, after he was unable to resolve the agent's doubts about irregularities in the airplane's registration certificate. The false registration charges were dropped when these drug prosecutions began.

Wood was indicted on three counts: (1) conspiracy to distribute, and to possess with intent to distribute, cocaine; (2) interstate travel in aid of a racketeering enterprise; and (3) possession of cocaine with intent to distribute. The jury convicted Wood on counts one and two but acquitted him on count three. On appeal, Wood asserts several challenges to his conviction and sentencing, which we discuss in order.

## II. DISCUSSION.

### A. Limitation of Cross-Examination.

Wood first contends that the district court improperly limited the scope of cross-examination of the government's key witness, Michael Stanton. Wood's counsel sought to ask Stanton whom he visited while in Florida in early June of 1985, in order to challenge Stanton's claim that he received cocaine from Wood. Counsel also attempted to inquire into the contents of a document in which Stanton allegedly complained about the intimidatory tactics used against him by the police. In both instances, the district court prohibited Wood's counsel from pursuing the line of questioning, ruling that the matters were collateral to the main issues at trial.

■ Cross-examination is the principal means by which the credibility of the witness and the truth of the testimony are verified, and therefore must be accorded great respect. *See Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 1111, 39 L.Ed. 2d 347 (1974). Where the defense counsel seeks to cross-examine government witnesses about matters relevant to credibility or bias, counsel should ordinarily be allowed wide latitude. Fed.R.Evid. 608; *United States v. Mansaw*, 714 F.2d 785, 788 (8th Cir.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). Nonetheless, we have long recognized that the trial judge must retain discretion to limit the scope of cross-examination. *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Peyro*, 786 F.2d 826 (8th Cir. 1986). Reversal, therefore, is warranted only where there has been clear abuse of discretion, and a showing of prejudice to the defendant. *Peyro*, 786 F.2d at 828; *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984).

■ We find no abuse of discretion in the limitation of cross-examination in the present case. While it is somewhat anomalous that the district court accepted Stan-

ton's assertion that those he visited in Florida, other than Wood, were not involved in the drug conspiracy, the testimony of Stanton's traveling companion on the Florida jaunt, David (Tony) Banker, corroborated Stanton's evidence that Wood delivered cocaine to Stanton during the June 1985 visit. In addition, the trial record shows that Wood's counsel was afforded a full and fair opportunity to cross-examine both Stanton and Banker about the details of the Florida trip. Because of this corroboration, and the compelling nature of the other evidence against Wood, we cannot say that the district court's foreclosure of cross-examination concerning the people Stanton visited during the June 1985 trip to Florida amounted to an abuse of discretion or prejudiced Wood.

■ Similarly, the district court's preclusion of cross-examination about the document in which Stanton alleged that the police dragooned him into cooperation does not call for reversal. Stanton testified that the document was prepared with the intention of dismissing his attorney, while he was disconcerted over the sentence that he had received on related state charges. The document was never filed. In addition, Stanton was subjected to lengthy cross-examination about his cooperation with the government and the details of his plea agreement. Even granting Wood's expansive reading of the record, there is no basis for his inference that Stanton attempted to withdraw the information he provided about Wood to the government.

In sum, Stanton, the chief pillar for the prosecution, was vigorously cross-examined by counsel about both the June, 1985 trip to Florida and his cooperation with the government. The court curtailed cross-examination into areas it felt were collateral to these two events. Given the deference accorded a trial court's determination of the proper scope of cross-examination, and the magnitude of the evidence against Wood, we conclude the district court did not commit reversible error by limiting cross-examination in these two respects.

**B. Admissibility of Co-Conspirator's Statement.**

■ Wood next avers that the district court erred in allowing Stanton's wife Mary to testify that Stanton had told her that he was working for Wood by putting radios in boats used for drug smuggling. In admitting, over Wood's objections, Mary Stanton's testimony about statements concerning alleged conspirators, it was incumbent upon the district court to determine that adequate foundation existed to invoke the hearsay exception of Fed.R.Evid. 801(d)(2)(E). Sufficient evidence had to exist to support an inference that the statement was made in furtherance of a conspiracy, while the conspiracy was in existence, and independent proof had to establish the existence of a conspiracy in which the declarant and the defendant participated. *United States v. DeLuna*, 763 F.2d 897, 908 (8th Cir.) *cert. denied sub nom. Thomas v. United States*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). Wood urges that the statement was improperly admitted under Fed.R.Evid. 801(d)(2)(E) because it was not made in furtherance of the conspiracy.

Whether the statement was made in furtherance of the conspiracy is a close question. Mary Stanton testified that her husband told her that he was working for Wood installing radio equipment in boats "used for marijuana." Although the statement refers to drugs, it doesn't appear that Michael Stanton was seeking to induce his wife to join the conspiracy. There is no evidence that Stanton's statement prompted action in furtherance of the conspiracy by either participant in the conversation. Stanton's statement did not identify the role of one conspirator to another, because Mary Stanton was not involved in the conspiracy. A more credible, albeit pedestrian, interpretation is that he was merely informing his wife about his activities. We hold that the statement was not in furtherance of the conspiracy, and therefore did not qualify for admission under Fed.R. Evid. 801(d)(2)(E). In view of the overwhelming amount of evidence against William Wood, however, the admission of this hearsay statement was harmless error.

*See United States v. Harris*, 546 F.2d 234 (8th Cir.1976).[1]

### C. Admissibility of Evidence of Cash Expenditures.

Wood's next set of contentions addresses the introduction of evidence concerning his purchase of a jet airplane for $1,085,000 in cash. Wood insists that the evidence is irrelevant because there is no proof that the airplane was used for drug smuggling or was purchased with the proceeds of crime. Wood claims that the details of the cash purchase were not proven by clear and convincing evidence and that the testimony and exhibits at issue were "other crimes" evidence, which did not satisfy the requirements of Fed.R.Evid. 404(b). Finally, Wood condemns the evidence as more prejudicial than probative. None of Wood's arguments are persuasive.

 It is axiomatic that evidence concerning the possession or expenditure of large amounts of currency is admissible where the defendant is charged with a crime in which pecuniary gain is the basic motive. *United States v. Jackskion*, 102 F.2d 683 (2d Cir.), *cert. denied*, 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517 (1939); *see also United States v. Crisp*, 435 F.2d 354, 359 (7th Cir.1970), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); *Thompson v. United States*, 389 F.2d 37 (9th Cir.), *cert. denied*, 391 U.S. 903, 88 S.Ct. 1651, 20 L.Ed.2d 417 (1968). Evidence of the expenditure of a large sum of currency is clearly relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains. *See United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986); *United States v. Bernal*, 719 F.2d 1475, 1478 (9th Cir.1983). While it is true, as Wood insists, that the cash purchase of an airplane does not prove a drug conspiracy, it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime alleged. Evidence which is colorless standing alone gains a new complexion when considered with other facts that are proved, and in turn, may corroborate the conclusions drawn from other facts. *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir.1975). Here, the evidence showed Wood, using an alias, purchased a jet airplane for $1,085,000, primarily in $20 and $50 bills. The money was brought to the aircraft dealer in three duffel bags, later found to contain traces of cocaine. The evidence further demonstrated that Wood contracted for refurbishing work on the plane, for which he paid over $100,000 in cash and checks drawn on a Cayman Islands' bank. From the total of evidence relating to the airplane purchase, the jury might reasonably believe that Wood was not engaged solely in the legitimate enterprise of electrical contracting, but was in fact engaged in illegal activities. *United States v. Ariza-Ibarra*, 605 F.2d 1216, 1224 (1st Cir.1979), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). Wood's suggestion that the large amounts of cash were from another licit activity goes only to the weight, and not to the admissibility of the evidence; Wood had the opportunity to offer evidence as to his own financial worth, and chose not to do so. We find that the evidence was relevant to the conspiracy charge.

Wood insists that the evidence of the airplane purchase is evidence of "other crimes" which is inadmissible under Fed.R. Evid. 404(b). The airplane purchase evidence, however, was not character evidence of the kind rendered inadmissible by Fed.R. Evid. 404(b). The government did not divulge that Wood was a target of a U.S.

---

1. The government maintains that the statement Mary Stanton attested to qualifies as a prior consistent statement under Fed.R.Evid. 801(d)(1)(B). While we have recognized that where a witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown through the testimony of a third party that he made similar declarations at a time when the imputed motive did not exist, *United States v. Lanier*, 578 F.2d 1246, 1255 (8th Cir.), *cert. denied*, 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978), the government failed to establish *when* Michael Stanton had made the prior statement. Absent this foundation, the statement cannot be used to show that the testimony was not an afterthought, and thereby rebut the theory of fabrication offered by the defense.

Customs Service investigation, nor did they reveal that he had been arrested as a result of this investigation. The government limited their proof to the circumstances surrounding the purchase of the airplane and Wood's use of a pseudonym while making that purchase. The evidence was offered solely to show that Wood was possessed of ill-gotten gains, to bolster the prosecution's case that Wood was a participant in a drug conspiracy. Thus, Fed.R.Evid. 404(b) does not apply. *See United States v. Bernal,* 719 F.2d at 1478.

■ We reject the argument that Wood's purchase of the aircraft was not proven by clear and convincing evidence. Initially, we note that the "clear and convincing" evidence standard is part of the tripartite test in this circuit for admission of evidence under Fed.R.Evid. 404(b), *see United States v. Wagoner,* 713 F.2d 1371, 1375 (8th Cir.1983), a rule which we have found inapplicable in the present case. In addition, the trial record indicates that there was specific testimony of what occurred, when it occurred, what was involved, and who was involved. On the strength of that evidence, we decide that the district court did not abuse its discretion in admitting evidence of the airplane purchase. Moreover, we do not find that the introduction of evidence of the cash purchase was so inflammatory or prejudicial as to outweigh its probative value, as Wood contends. The record fails to indicate any confusion on the part of the jury, nor was the evidence so sensational as to divert the jury's attention from the issues of the case.

**D. Evidence of Wood's Refusal to Allow a Non-Custodial Search.**

■ Wood additionally assigns error to the district court's refusal to grant a mistrial after a government agent wrongly testified about Wood's pre-arrest refusal of permission to search his briefcase. On direct examination of Special Agent Miller, government counsel asked Miller to relate the details of the (initially) noncustodial encounter he had with Wood at the St. Petersburg-Clearwater Airport. When Miller testified that he asked to see what was inside Wood's briefcase, Wood's counsel approached the bench and moved that Miller not be allowed to testify concerning Wood's refusal to consent to a search of his briefcase. The court agreed. The briefcase was later examined by Miller and its contents inventoried. On cross-examination, Wood's counsel inquired about the contents of the briefcase, but did not ask about Wood's refusal to consent to a search. The following exchange took place:

> MR. BYRD: You mentioned there was some cash. How much cash are we talking about that was in that briefcase?
> THE WITNESS: Well, originally there was two thousand fifty dollars in cash, which was loosely distributed throughout the briefcase. Now, earlier I had asked for Mr. Wood's consent to search the briefcase and at that time he declined to give it to me.

Wood's counsel immediately moved for a mistrial, which the district court denied. Instead, the district court struck the answer as nonresponsive, and admonished the jury to disregard Miller's response. Wood now contends that he was prejudiced because his lawful refusal to consent to the search was inevitably translated by the jury into guilt for the crimes for which he was on trial. Although we agree it was error for Miller to testify regarding Wood's refusal to consent to the search, we determine that such error was harmless.

Wood would have us enunciate a novel rule of constitutional proportions drawn primarily from precedents applicable to the fifth amendment privilege against self-incrimination, appended to the fourth amendment privilege against noncustodial search. We decline his invitation because the error in the present case did not unduly prejudice him for the following reasons. The reference occurred once, an isolated remark during a six-day trial, and the district court immediately issued a curative instruction. The prosecution did not elicit the offending testimony, and made no use of it during the course of the trial. More importantly, Miller's unsolicited remark concerned his encounter with Wood while investigating an airplane registration irregularity, an inves-

tigation peripheral to the drug conspiracy charges at issue. Finally, the other evidence as to Wood's guilt is overwhelming, so much so that we find that the error was harmless.

### E. Sentencing.

██ Finally, Wood launches a double-edged attack on his sentence, claiming that the predicate amount of cocaine necessary to trigger the sentence enhancement provisions of 21 U.S.C. § 841 (b)(1)(A)(ii)[2] was neither properly charged in the indictment nor tried to the jury. We construe Wood's argument as both a challenge to the sufficiency of the indictment and an assertion of his right, under the due process and jury guarantees of the Constitution, to have a jury determine all the essential elements of the offense he was charged with committing. Both facets of Wood's argument presuppose that the enhanced penalty provision of 21 U.S.C. § 841(b)(1)(A)(ii) creates an offense separate from the "prohibited acts" defined in 21 U.S.C. § 841(a). Because we decide that the quantity of cocaine is not an element of a "separate offense" under 21 U.S.C. § 841(b)(1)(A)(ii), we do not pass upon Wood's sufficiency of the indictment and jury determination arguments.

Offenses involving domestic trafficking in controlled substances are governed by 21 U.S.C. § 841. Subsection (a) of section 841 defines the "prohibited acts." The penalties for these offenses, set out in subsection (b) of section 841, provided for a twenty-year sentence and a $250,000 fine for offenses involving a kilogram or more of cocaine, and a fifteen year sentence and $125,000 fine for cocaine-related convictions of less than one kilogram.[3] *See* 21 U.S.C. § 841(b)(1)(A)(ii).

Both the plain language and the structure of 21 U.S.C. § 841(b)(1)(A)(ii) indicate that it is a sentencing provision. The subsection is titled as a "penalties" provision.

Standing alone, § 841(b)(1)(A)(ii) is insufficient to state a criminal offense because it contains no other elements; rather, it depends on elements listed as "prohibited acts" in section 841(a). The sentencing scheme thus does not relieve the prosecution of the burden of proving guilt, as Wood suggests; rather, section 841(b)(1)(A)(ii) only becomes applicable after a defendant has been duly convicted of a crime under section 841(a).

In light of the plain language of the statute, we need not repair to the legislative history to inform our analysis. *See Maine v. Thiboutot*, 448 U.S. 1, 6 n. 4, 100 S.Ct. 2502, 2505 n. 4, 65 L.Ed.2d 555 (1985). However, because of the novelty of the argument advanced by Wood, we pause to note that what scant legislative history exists confirms our interpretation.

Our search for legislative history directly addressing the "separate offense" issue has proved unavailing. However, the Senate report which accompanies the Drug Enforcement Amendments to the Crime Control Act of 1984 explains that the concept of linking the quantity of drugs involved to the degree of punishment attached to the crime was adopted from the drug penalties schedule of the Criminal Code Reform Bill, S1630, a bill reported out of Committee in the 97th Congress. *See* S.Rep. No. 98–225, 98th Cong., 2nd Sess. at 255 (1984), U.S. Code Cong. & Admin.News 1984, p. 3182. The report on S1630 states that the bill "simplifies and revamps the complex *penalty* scheme in the Drug Abuse and Control Act of 1970." *See* S.Rep. No. 97–307, 97th Cong., 1st Sess. at 866 (1981) (emphasis added). Further references to enhancement of the "penalties provisions," and the distinction between "acts" and "penalties" intersperse the report. *Id.* at 866–69. No mention of drug quantity is made in the enumeration of the "offenses" created by the legislation. *Id.* at 867. In sum, such

---

**2.** 21 U.S.C. § 841(b)(1)(A)(ii) was amended by the Anti-Drug Abuse Act of 1986, Pub.L. No. 99–570. All references in this opinion are to the statute as it existed prior to the 1986 amendment.

**3.** In the case of an attempt or conspiracy to commit one of the "prohibited acts" described in 21 U.S.C. § 841(a), the penalty is the same as for the offense which was the object of the attempt or conspiracy. *See* 21 U.S.C. § 846 (1986).

legislative history as exists is devoid of any indication that Congress intended to create a separate offense based on the quantity of cocaine involved.

The dissent takes issue with our conclusion that 21 U.S.C. § 841(b)(1)(A)(ii) does not state a "separate offense." The dissent argues that, on the one hand, we should wait until another case to decide this issue, yet on the other hand, we should vacate Wood's enhanced sentence because the jury made no finding as to drug quantity, citing *United States v. Alvarez*, 735 F.2d 461 (11th Cir.1984). *Post* at 1391. While the dissent demonstrates admirable fidelity to our usual practice of not going beyond the parties' briefs to decide issues not raised therein,[4] we believe there is no principled way either to uphold or vacate the sentence without deciding whether quantity constitutes an element of the offense as defined by 21 U.S.C. § 841(b). We also find *Alvarez* unpersuasive, and believe that *United States v. Gibbs*, 813 F.2d 596 (3d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987), states the better rule.

Recently, in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court revisited the element of the offense/sentencing factor issue. The Court reiterated that *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), "rejected the claim that whenever [the legislature] links the 'severity of the punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." *McMillan v. Pennsylva-*

*nia*, 106 S.Ct. at 2416. The Court then stressed that the key to distinguishing between elements of the offense which must be proved beyond a reasonable doubt to the trier of fact, and other "identified facts" left for the judge at sentencing, was the legislature's definition of the elements of the offense at issue. *Id.* *McMillan* thus instructs a reviewing court to look to the specific statute and its legislative history to resolve claims like Wood's.

This directive undermines *Alvarez, supra*. The *Alvarez* court eschewed inquiry into the language, structure, or legislative history of the specific enhancement provision; instead, the court reached its conclusion by examining cases concerning other crimes carrying enhanced penalties. *Alvarez* thus did not anticipate either the *McMillan* Court's command to look to the statute and legislative history, or its admonition that the "legislature's definition of the elements of the offense is usually dispositive." *McMillan v. Pennsylvania*, 106 S.Ct. at 2416. The persuasive value of *Alvarez* is further diminished because the court there examined a different drug statute than the one construed here, a statute which enhanced only convictions involving more than a ton of marijuana. It is more reasonable to assume that Congress intended to create a "separate offense" when a quantity of a particular type of drug is singled out for enhancement. By contrast, the drug statute at issue here includes quantity enhancements for all of the controlled substances listed in Schedule I and Schedule II of the Act.[5]

---

**4.** It is well established, however, that an appellate court can affirm a judgment on any grounds supported by the record, whether or not raised, argued, decided, or relied upon by the district court. *Schweiker v. Hogan*, 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982); *Wycoff v. Menke*, 773 F.2d 983, 986 (8th Cir.1985), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986).

**5.** The other cases relied upon by the dissent suffer from similar infirmities. *United States v. Buishas*, 791 F.2d 1310 (7th Cir.1986), did not address the element of the offense/sentencing factor issue, but indicated only that the trial court's use of special interrogatories was "permitted," not required, in cases where the de-

fendants' sentences depended on the amount of marijuana they were dealing. *United States v. Orozco–Prada*, 732 F.2d 1076 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984) (cocaine and marijuana) and *Brown v. United States*, 299 F.2d 438 (D.C.Cir.), *cert. denied sub nom. Thornton v. United States*, 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962) (four different substantive offenses) both involved ambiguous jury verdicts on general conspiracy indictments charging the violation of more than one substantive offense. In those cases the sentencing judge could not determine whether the jury intended to convict for one, some or all of the substantive offenses underlying the conspiracy. By contrast, the sentencing judge here knew that Wood was convicted of

Our review of the language, structure and legislative history of 21 U.S.C. § 841(b)(1)(A)(ii), and case law deciding similar element of the offense/sentencing factor claims, *see, e.g. McMillan v. Pennsylvania, supra; Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *United States v. Jackson,* 824 F.2d 21 (D.C.Cir.1987), convinces us that Congress has merely deemed a particular fact relevant to sentencing and has dictated the enhancement available if the sentencing judge determines the offense so warrants. We are disinclined to transform a sentencing factor into an element of the substantive offense against the will of Congress.

Having concluded that Congress intended that the quantity of cocaine was to be treated under section 841(b)(1)(A)(ii) as a sentencing consideration, and not as an element of any offense, we need only mention that there is no constitutional right to jury sentencing, even where the sentence turns upon specific findings of fact. *McMillan v. Pennsylvania,* 106 S.Ct. at 2420; *see also Spaziano v. Florida,* 468 U.S. 447, 462, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).

We have examined Wood's remaining contentions, and find them without merit. Accordingly, the judgment of the district court is affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

I concur with the majority in all respects except as to sentence enhancement to twenty years imprisonment on Count I.

I disagree that an enhanced sentence on the conspiracy count can be imposed in this case. Wood was charged with three counts in the indictment: conspiracy to distribute and possess with intent to distribute cocaine (Count I), interstate travel in aid of a racketeering enterprise (Count II), and possession with intent to distribute approximately five kilograms of cocaine (Count III). It is apparent from the record that the allegations of Count III constitute one

of the overt acts alleged in support of the conspiracy. All three of the counts were submitted to the jury which returned guilty verdicts on Counts I and II and a not guilty verdict on Count III. The district court nevertheless sentenced Wood to a prison term of twenty years, pursuant to the sentence enhancement provisions of 21 U.S.C. § 841(b)(1)(A)(ii).

In this case, the Government in its indictment charged the defendant with crimes involving sufficient amounts of cocaine to trigger a sentence enhancement. The conspiracy count alleged as an overt act that defendant gave "five (5) kilograms of cocaine to a co-conspirator in Key Largo, Florida." Count II alleged no quantity of any narcotic, but Count III charged Wood with participation in a distribution arrangement of approximately five kilograms of cocaine.

The problem we face arises from the jury reaching a not guilty verdict on Count III and the trial court's instruction on Count I stating that a "measureable amount of cocaine" would support the charge in the indictment. The combined effect of the instructions and not guilty verdict on Count III is that the jury, in terms of the indictment, made no finding directly or by implication as to the amount of cocaine involved in the crimes for which Wood stands convicted.

On this appeal, the Government does not argue that sentence enhancement may occur regardless of the amount of cocaine alleged in the indictment. To the contrary, the Government asserts that its indictment contained allegations sufficient to invoke the enhanced penalty. The issue then is whether to support the sentence the jury needed to make a finding under the indictment sufficient to invoke enhancement. As we have noted, no such jury finding exists.

Appellant cites *United States v. Alvarez,* 735 F.2d 461 (11th Cir.1984), in support of his contention. There the court held the

conspiracy to distribute and possess with intent to distribute cocaine, the only substantive of-

fense stated in Count I of the indictment.

indictment as drawn, which did not mention the amount of marijuana, could not support an enhanced penalty. The court stated, "[s]ince the quantity of the substance constitutes a critical element of the offense under 21 U.S.C. § 841(b)(6), and no quantity of marijuana was specifically alleged in the indictment, the enhanced sentences imposed pursuant to that provision are invalid." *Id.* at 468. The Government in its brief apparently recognizes the validity of *Alvarez* but would distinguish it because, in the present case, the Government had made allegations in the indictment of the amount of drugs. Yet, the essence of *Alvarez* rests on the absence of a jury finding upon a "critical element of the offense." *Id.* *See also United States v. Buishas,* 791 F.2d 1310 (7th Cir.1986); *United States v. Orozco-Prada,* 732 F.2d 1076 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *Brown v. United States,* 299 F.2d 438 (D.C.Cir.), *cert. denied sub nom. Thornton v. United States,* 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962). These cases indicate that where uncertainty exists as to whether the jury has made a finding justifying an enhanced sentence, the enhanced sentence will be vacated. These cases further suggest the use of a special verdict, where necessary, to establish the underlying fact or facts to support the increased sentence.[1]

In response to an initial draft of this dissent containing the text as written above, the majority engages in extensive dialogue justifying its decision on an issue, which I have demonstrated, has not been raised by any party in the district court or on appeal. The issue is raised and discussed nowhere else in the record, only in the majority opinion. *See* maj. op. at 1388–90.

Disregarding the state of the record in this case, the majority justifies this resolution of a non-issue in this case by misreading and misapplying a rule of appellate practice. The majority states:

It is well established, however, that an appellate court can affirm a judgment on any grounds supported by the record, whether or *not raised, argued, decided, or relied upon by the district court. Schweiker v. Hogan,* 457 U.S. 569, 585 n. 24, 102 S.Ct. 2597, 2607 n. 24, 73 L.Ed.2d 227 (1982); *Wycoff v. Menke,* 773 F.2d 983, 986 (8th Cir.1985), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986).

Maj. Op. at 1389 n. 4 (emphasis added).

The emphasized phrase is not now nor has it ever been the rule on appeal in this court nor any other federal appellate court to this writer's knowledge.

In the *Hogan* case, the Court stated in the text, "[a]lthough appellees did not advance this argument in the District Court, they are not precluded from asserting it as a basis on which to affirm that court's judgment." *Schweiker v. Hogan,* 457 U.S. 569, 585, 102 S.Ct. 2597, 2607, 73 L.Ed.2d 227 (1982).

That language does not apply here because the issue decided by the majority has not been raised by appellee (or any other party) as a basis for affirmance.

In *Wycoff,* this court dismissed a prisoner's civil rights suits on statute of limitations grounds—grounds that already had been asserted to the district court by defendant Menke in a motion to dismiss. *Wycoff v. Menke,* 773 F.2d 983 (8th Cir.1985), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986). The pertinent language in *Wycoff* reads:

Menke did not raise the Iowa two-year statute of limitations as an affirmative defense in his answer to Wycoff's complaint. *See* Fed.R.Civ.P. 8(c). While this failure would normally result in the waiver of a limitations defense, *see, e.g., Myers v. John Deere Ltd.,* 683 F.2d 270, 273 (8th Cir.1982), no waiver occurred in this case since this defense had already

---

1. I recognize that *Alvarez* does not represent the only view about the requirement of a jury finding on the amount of drugs being necessary to support an enhanced sentence on the basis that quantity of the drug is an essential element of the crime. The majority opinion in *United States v. Gibbs,* 813 F.2d 596 (3d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 83, 98 S.Ct. 45 (1987), is to the contrary. That opinion and the dissent of then Chief Judge Aldisert contains an illuminating discussion of the issue and citation to relevant cases.

been asserted by Menke as a Fed.R. Civ.P. 12(b)(6) motion to dismiss.

\* \* \* \*

Finally, Wycoff contends that this court should not address the limitations issue since Menke failed to assert this issue by cross-appeal. This contention is without merit. Even if *Wilson* [471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254] had been decided prior to Wycoff's appeal, Menke would have had no obligation to raise the limitations issue by cross-appeal because *Wilson* simply provides an additional ground on which to affirm the district court in its entirety. When a party seeks neither to modify nor alter a lower court decision 'but only to sustain it on grounds other than those relied on by the court below,' no obligation to cross-appeal exists.

*Id.* at 984–85 (citation omitted).

Rules governing appeals such as enunciated in *Hogan, supra,* and *Wycoff, supra,* are a far cry from the appellate rule applied by the majority—that an appeals court can affirm a judgment of the district court on issues never raised there nor on appeal by any party.

It seems to me the reaching out to decide an issue never before the appeals court or the district court represents an improper procedure. Appellate courts ought not decide important legal issues without benefit of briefs submitted by the parties on such issues. Yet, the majority makes such a decision today.

Finally, I must note that the majority rushes to judgment in this case where my other brethren on this circuit have refused to tread. In *United States v. Darveaux,* 830 F.2d 124 (8th Cir.1987), Judge Bowman wrote a unanimous opinion (with Judges Heaney and Wollman) considering the enhanced penalty provisions of the Armed Career Criminal Act. *See* 18 U.S.C. app. § 1202(a)(1) (1982 & Supp.III 1985). In an extensive footnote which I quote below, the judges, recognizing a split of authority in the circuits, declined to resolve the issue for the Eighth Circuit whether the penalty provision of that Act requires, or does not require, the elements for an enhanced penalty to be alleged in the indictment and tried to the fact finder.

We note a split of authority amongst the circuits regarding whether the enhanced penalty portion of § 1202(a) states a separate offense, all the elements of which must be alleged in the indictment and tried to the fact-finder [*United States v. Davis,* 801 F.2d 754, 755 (5th Cir.1986)], or merely a penalty enhancement provision relating to the offense described in § 1202(a)(1) [*United States v. West,* 826 F.2d 909 (9th Cir. 1987); *United States v. Jackson,* 824 F.2d 21, 25–26 (D.C.Cir.1987); *United States v. Hawkins,* 811 F.2d 210, 220 (3d Cir.), *petition for cert. filed,* (U.S. May 5, 1987) (No. 86–6847); *United States v. Gregg,* 803 F.2d 568, 570 (10th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987)]. There is no controlling authority in this circuit on whether the enhanced penalty portion of § 1202(a) states a separate offense or is merely a penalty enhancement provision. However, on September 14, 1987, the Court en banc heard argument in the cases of *United States v. Rush,* 824 F.2d 1537 (8th Cir.1987), and *United States v. Cloyd,* 819 F.2d 836 (8th Cir.1987), which present this issue and provide us the opportunity to resolve it in the near future. This issue is not before us in the instant case, since Darveaux does not contend that it was improper for the government to charge his prior felonies and introduce evidence to convince the jury of their existence.

*Darveaux,* 830 F.2d at 125, n. 2.[2]

Earlier in *United States v. McGeehan,* 824 F.2d 677 (8th Cir.1987), Judge Henley's opinion (joined by Judges Arnold and Magill) held that the government failed to prove the requisite amount of a drug (LSD) to justify an enhanced sentence. That panel took special pains to note that it would not reach out and decide whether or not

2. As of this writing, no en banc opinions in *Cloyd* and *Rush* have been filed.

facts underlying the enhanced penalty need be found by a jury, or by the trial court.[3]

I do not agree with the majority's decision to address the merits of whether the statute here under consideration requires a jury or a judge to make the requisite factual determination triggering an enhanced penalty, except to observe that *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), cited in the majority opinion. *See* maj. op. at 1389–90, is off the beaten path of this case. There, the Pennsylvania statute, in issue on due process grounds, specifically provided for the judge (not a jury) to impose a mandatory minimum sentence in certain felonies where the *judge* finds the defendant "visibly possessed a firearm." *Id.* at ——, 106 S.Ct. at 2414. The precise language of that statute cannot equate with the uncertainties present in the enhancement provisions of federal laws relating to crimes for possession or trafficking of various quantities of contraband drugs.

The majority has validated the sentence in this case on an issue not briefed or argued by the parties. I would leave that issue—whether the amount of cocaine is a critical element of the offense to be determined by a judge or the jury—to another day and another case where the issue is properly presented, briefed and argued by the parties.

In my view, the prosecution's contention that the jury has found the requisite quantity of cocaine to permit the trial court to apply an enhanced penalty must be rejected. Accordingly, in the present appeal, I would vacate the twenty-year prison sentence and direct the district court to reduce the sentence for conspiracy to the maximum sentence of fifteen years.

**3.** In a footnote, the court stated the following:
In present circumstances, we need not address the question whether the amount of LSD is an element of the offense to be determined by the jury, or an issue for the district court at sentencing. *See Mullaney v. Wilbur*, 421 U.S. 684, 696–701, 95 S.Ct. 1881, 1888–

1890, 44 L.Ed.2d 508 (1974); *United States v. Gibbs*, 813 F.2d 596, 602–03 (3d Cir.1987) (2–1); *id.* at 603–07 (Aldisert, J., dissenting) (discussion of both sides of this issue).
*United States v. McGeehan*, 824 F.2d 677, 681–82 n. 7 (8th Cir.1987).