UNITED STATES of America, Appellee,

v.

**Mark Wayne ABANATHA, Appellant,**

**UNITED STATES of America, Appellee,**

v.

**Katherine Dawn Newsome ABANATHA, Appellant.**

**Nos. 92–2916, 92–2918.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1993.

Decided July 26, 1993.

Mark F. Hampton, Little Rock, AR, for appellant Mark Wayne Abanatha.

Samuel A. Perroni, Little Rock, AR, argued (Mona J. McNutt, Samuel A. Perroni, on brief), for appellant Katherine Dawn Newsom Abanatha.

Kevin T. Alexander, Little Rock, AR, argued (Charles A. Banks and Kevin T. Alexander, on brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and BRIGHT, Senior Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

Katherine Dawn Abanatha and Mark Wayne Abanatha pleaded guilty to conspiracy to possess marijuana with the intent to distribute it. Mark Abanatha was sentenced by the District Court to 17 years and six months in prison and four years of supervised release. Katherine Abanatha was sentenced to two years in prison and three years of supervised release. Both of the Abanathas appeal their sentences. We affirm.

The main issue of legal significance has to do with the inclusion in the Presentence Report in Katherine's case of immunized information—facts she revealed after the United States promised it would not use against her whatever she said. We agree with Katherine that this information should not have been included in the Report. We direct that this practice be stopped. In this case, though, the District Court[1] did not consider the information in question. Katherine therefore suffered no prejudice.

## I.

The Abanathas distributed marijuana in eastern Arkansas. They bought marijuana in Texas, repackaged it, and sold it in the West Memphis area. One of their couriers, Barbara Lowe, a government witness, testified that Mark Abanatha, sometimes accompanied by Katherine, would go to Texas and buy the marijuana. Ms. Lowe would then pick up the marijuana and bring it to Arkansas. In West Memphis, Ms. Lowe turned the marijuana over to the Abanathas. She was paid by the pound.

Ms. Lowe testified that she received instructions concerning marijuana from both Mark and Katherine; in fact, she said she was originally recruited as a courier by Katherine. (Since the Abanathas pleaded guilty, Ms. Lowe gave this testimony at the sentencing hearing, rather than at trial.) While the Texas–to–Arkansas drug dealing is not the basis for the crime the Abanathas are convicted of, the Court considered Ms. Lowe's

---

1. The Hon. Elsijane Trimble Roy, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

testimony, along with that of Ricky New-some, another drug courier, in determining how much marijuana to hold the Abanathas responsible for: 125 pounds for Mark and 80 pounds for Katherine.

The conspiracy to which the Abanathas pleaded guilty ended on June 8, 1991. Because of the risks of going all the way to Texas for their marijuana, the Abanathas began looking for a local supplier. Katherine Abanatha thought she had found one in Dennis Cross. Unbeknownst to the Abanathas, Dennis, with the cooperation of his wife, Tanya, was a paid Drug Enforcement Agency informant. After several tape-recorded telephone calls to the Crosses, the Abanathas drove to the Crosses' mobile home to make a purchase. Dennis didn't have the marijuana with him—he said he was only a middleman for another supplier—so Mark and Dennis went to the Cotton Tree Inn Motel in North Little Rock to get the drugs. Once there, Mark bought 20 pounds of marijuana from an undercover policeman. Meanwhile, Katherine was at the Crosses', telling Tanya—who had a tape recorder going—about all the money Mark was making selling drugs.

Mark and Katherine were arrested. After entering guilty pleas, they awaited sentencing. So far in the process, they point to no problems for our review; they object only to aspects of the sentencing phase of the proceedings. Specifically, Katherine takes issue with the following: the inclusion in her presentence report of her immunized statements about dealing drugs; the Court's denial of her request for a downward adjustment of her Base Offense Level for having only a minor role in the conspiracy; and the Court's addition of two points to her criminal-history classification for committing this offense while on probation for burglary. Mark argues that the Court erred in classifying him as a career offender, in calculating the amount of drugs involved, in denying his request for a two-point reduction in his Base Offense Level for acceptance of responsibility, and in imposing a sentence on him that he believes is greater than the statutory maximum. We take each defendant's arguments in turn.

II.

■ Katherine says it was wrong for the Presentence Report to contain immunized information about her prior involvement in drug dealing. We agree. Facts concerning this involvement should not have been included in the Presentence Report. Once the United States has agreed to a grant of immunity and the would-be defendant has testified, that testimony is useless against the testifier, and it may not be used to affect a subsequent sentence of the testifier (or allowed to affect conditions and terms of confinement). The Fifth Amendment to the Constitution, see *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and the Sentencing Guidelines, § 1B1.8 App. n. 1, require no less.

■ The Government argues that the Court should have all the available, relevant information about a defendant when selecting an appropriate sentence. In general, this is true. See *United States v. Wise*, 976 F.2d 393, 400 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993); 18 U.S.C. § 3551. However, a defendant's prior, immunized testimony is, by agreement with the Government, not available. The protection given a defendant by an immunity agreement is coextensive with the protection against self-incrimination afforded by the Fifth Amendment. *Kastigar v. United States, supra*, 406 U.S. at 453, 92 S.Ct. at 1661. Regardless of how broadly the Sentencing Reform Act may be construed, so as to allow a sentencing court to consider as much information as possible about a defendant, the Act is, nonetheless, limited by the constitutionally protected rights of that defendant. Where the two conflict, the statute must yield.

■ While including the immunized facts in the presentence report was error, it was not prejudicial error. Those facts did not affect the sentence. Recognizing the nature of those paragraphs of the Presentence Report that give immunized facts about the Abanathas, the District Court wrote:

Paragraphs 6–11 in the Offense Conduct section of the Presentence Report are relevant only to the defendants' criminal histo-

ry. The information contained in those paragraphs should not, and will not, be considered in the determination of the appropriate term of imprisonment within the applicable guideline range.

*United States v. Mark Wayne Abanatha and Katherine Dawn Newsome Abanatha,* Nos. LR–CR–91–114(1) and (2) (E.D.Ark. August 20, 1992) slip op. 4. Katherine does not point to any objective evidence in the record to show that the Court improperly considered the offending facts when calculating either her Criminal History Category or her Base Offense Level. She got the same sentence—through the calculus of the Guidelines—with the immunized information in the Presentence Report that she would have gotten had paragraphs 6–11 been omitted. Indeed, Katherine's brief in this Court, pp. 5, 11, acknowledges that the District Court did not consider the objectionable information.

Katherine argues that the prejudice she suffered was more subjective. For example, at oral argument her attorney said the District Court's reference to Katherine's "criminal history," quoted above, did not mean her specific Criminal History Category—the calculation in the Sentencing Guidelines based on a defendant's past criminal activity—but her general criminal history, such as a judge might consider when deciding whether to grant a downward departure from the applicable sentencing range. (Prejudicial influence on the District Court's judgment of where, within the range, to set Katherine's sentence is not an issue here, since the Court sentenced her at the very bottom of the applicable range.)

Whether a downward departure from the sentencing range would have been appropriate is not an issue in this appeal. Katherine does not point to any possible specific effect of the information; she asks us to reverse her sentence based on the mere fact of the District Judge's knowing about her immunized testimony about prior criminal activity (which, incidentally, the Judge knew about anyhow, since she had sat on Katherine's previous cases). This argument is based on the premise that trial judges lack sufficient objectivity; that they are subject to the influence of things they hear in the courtroom,

but which should not be allowed to affect a case. One of the reasons we have trial judges is because some of the information offered in courtrooms should not be allowed to affect the outcome of a case. Someone has to decide what facts to consider and what facts to ignore. We trust that decision-making responsibility to the trial judge. Sometimes this responsibility requires difficult mental gymnastics—as in a bench trial where the judge decides both what facts to admit into evidence and how to weigh that evidence—but trial judges manage such feats of objectivity all the time. The District Court did so in this case.

■ Katherine's next argument is that the District Court erred in finding that she was not a minor participant in the conspiracy and, consequently, not reducing her offense level by two points. She says that while she knew about the drug dealing, benefited from it, and occasionally helped her husband, she wasn't a full partner in all the doings. The Government presents a different set of facts, and the District Court believed them. "A sentencing court's determination of a participant's role in an offense is a factual finding subject to the clearly erroneous standard of review." *United States v. Hall,* 949 F.2d 247, 249 (8th Cir.1991).

Considering all the evidence—including the testimony of Ms. Lowe and the Crosses, who said Katherine was an active participant in the drug dealing—we are not convinced the District Court made a mistake.

■ Finally, Katherine argues that the District Court erred by increasing her Criminal History Category by two points when it found she committed this offense while on probation for a prior felony. She says the Government did not present sufficient evidence to support the Court's finding. This argument has no merit. The Government introduced a certified copy of the burglary judgment and conviction, which, on June 9, 1987, placed Katherine on probation for five years. The Abanathas' conspiracy continued through June 13, 1991. These facts are sufficient to support the Court's finding. For rebuttal, Katherine offered only her mother's testimony, which was that she thought,

maybe, Katherine's probation had been reduced to three years.

### III.

■ Mark Abanatha argues that he should not have been classified as a career offender. He says the Government failed to follow the procedures required by 21 U.S.C. § 851. Whether the Government complied with § 851 notice procedures in this case is irrelevant because those procedures don't apply to the Guidelines' career-offender enhancement. *United States v. Adams,* 938 F.2d 96, 99 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 974, 117 L.Ed.2d 138 (1992). Likewise, it is irrelevant that there was no § 851 hearing on the validity of Mark's prior convictions, since all that is required of the Government under the Sentencing Guidelines is that it prove by a preponderance of the evidence that he had two prior felony convictions. *United States v. Malbrough,* 922 F.2d 458, 464 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991). The Government offered Mark's prior convictions, as referred to in the Presentence Report, to carry its burden; and Mark did not challenge them. He had the responsibility of either disproving the convictions or, if he had been improperly convicted, challenging their validity. He did not carry this burden.

■ In addition, Mark argues that his sentence is too long because he was held accountable for possessing more marijuana (125 pounds) than he was originally charged with (42 pounds). Not so. The quantity of drugs involved in this crime is not an element of the crime itself, but a factor for the consideration of the sentencing court. *United States v. Wood,* 834 F.2d 1382, 1388–89 (8th Cir.1987). The court, when fixing a defendant's sentence, may consider amounts of drugs from the defendant's other drug dealings—not the one the defendant was convicted of—provided those other dealings were part of the same course of conduct or scheme. *United States v. Simmons,* 964 F.2d 763, 771 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992).

■ Mark makes two collateral arguments based on the amount of drugs involved. First he says that when he pleaded guilty, he was pleading guilty only to possessing 42 pounds of marijuana. This argument fails because, among other reasons, he was told that the Government intended to hold him responsible for 149 pounds. The Government filed a Bill of Particulars, stating its intentions, and Mark changed his plea to guilty on the next day. He knew or should have known what the stakes were. Secondly, Mark argues that because the indictment did not specify a quantity of marijuana, he could be sentenced to a maximum of only five years in prison. This five-year-maximum sentence comes from a reading of 21 U.S.C. § 841(b), giving a sentence of "no more than five years" for quantities of marijuana under 50 kilograms (approximately 110 pounds). He realizes that this argument goes against our decision in *United States v. Wood, supra,* where we held that the sentencing provisions of § 841(b) are not elements of the crimes defined in § 841(a). 834 F.2d at 1388. We, as a panel of this Court, cannot overturn *Wood.* Consequently, we consider Mark to have pleaded guilty under subsection (a); what the Court did in sentencing him under subsection (b) is a separate matter. One does not necessarily limit the other.

■ Finally, Mark thinks he should have gotten a two-point reduction in his offense range for acceptance of responsibility. Essentially, he says he is entitled to this reduction because he pleaded guilty to conspiring to possess 42 pounds of marijuana. The Court held he was not entitled to the reduction because he did not accept responsibility for all of his criminal conduct—specifically, the buying and selling of marijuana from Texas. First of all, as we have said many times, a defendant is not entitled to the acceptance-of-responsibility reduction just because he pleads guilty (though a sentencing court may give the reduction on the sole basis of a plea). Also, whether or not to reduce a defendant's range for accepting responsibility is a matter for the discretion of the sentencing court. In this case, the question came down to whether the Court be-

**1252**

lieved Mark, who said he was involved with only 42 pounds of marijuana; or Ms. Lowe, the courier, whose testimony involved Mark with 149 pounds of marijuana. The Court found that Mark was involved with 125 pounds; accepting responsibility for 42 pounds is different from accepting responsibility for the full amount. The Court did not abuse its discretion.

The judgments of the District Court and the resulting sentences are affirmed.