UNITED STATES of America,
Plaintiff,

v.

Christopher McFARLANE, Defendant.

No. 00–C0060–03–CR–W–2–5.

United States District Court,
W.D. Missouri,
Western Division.

Nov. 8, 2001.

David H. Johnson, Laughlin, Johnson & Campbell, Kansas City, MO, Henri J. Watson, Watson & Demeron, Kansis City, MO, Elena M. ranco, Kansas City, MO, Matthew J. Bock, Lamson, Dugan & Murray, LLP, Omaha, NE, for Defendant.

Gregg R. Coonrod, Charles E. Ambrose, Jr., U.S. Atty's Office, Kansas City, MO, for U.S.

## ORDER

LAUGHREY, District Judge.

Pending before the Court is the United States' Motion for Reconsideration of Sentencing (Doc. # 203), made pursuant to Rule 35 of the Federal Rules of Criminal Procedure. In it the Government asks the Court to resentence the defendant, Christopher McFarlane, without any consideration of the information provided by Mr. McFarlane to the Government pursuant to his cooperation agreement with the Government. The Motion is denied.

## I. Factual Background

This case arises out of a sting operation arranged by the Government using a confidential informant who was "working off his sentence" as a result of being apprehended in an unrelated drug conspiracy. After several attempts, the confidential informant arranged to sell cocaine to Tywanne Aldridge. Tywanne Aldridge was a football player at the University of Kansas whose prior criminal activity involved making false IDs in his dorm room and purchasing a kit to grow illegal mushrooms which was never used. He is the nephew of Mr. McFarlane and the cousin of the remaining two defendants, Monroe Lockhart and Preston Gardenhire. All four defendants were arrested when they arrived in Kansas City with $40,000 in cash to purchase cocaine from an undercover agent. The defendants' car contained four loaded guns.

Subsequent to being arrested, Mr. McFarlane agreed to cooperate with the Government. Before cooperating, he was given a letter from the Government which set forth the terms of his cooperation. In relevant part, that letter provides as follows:

First, it is understood that any debriefings of Mr. McFarlane which will be conducted in the course of this investigation will be governed by the terms of this letter. As to these debriefings, it is agreed that, pursuant to U.S.S.G. § 1B1.8, any information to be used in the sentencing of Mr. McFarlane will not include information provided to the government by Mr. McFarlane during the course of these debriefings, but will be limited to independent information and evidence in the possession of the United States prior to the initial briefings of Mr. McFarlane. The United States agrees not to use any debriefing statements made by Mr. McFarlane at sentencing, or in its case in chief in any new criminal actions which might be brought against Mr. McFarlane, unless such action is for the offenses of perjury or false statements. The United States reserves the right, however, to utilize such statements in the cross examination of Mr. McFarlane should he appear as a defendant or witness in any further judicial proceedings. . . .

Nothing in this letter of agreement shall preclude the government in any way from presenting any accurate information regarding any matter, including but not limited to, any sentencing matter or consideration, to the sentencing court of the United States Department of Probation. In addition, nothing in this agreement shall restrict the access of the Court or the Department of Probation to information and records in the possession of the government, including records pertaining to relevant conduct as such conduct is defined in U.S.S.G. § 1B1.3.

Prior to signing this cooperation agreement, Mr. McFarlane's attorney suggested a number of changes which were not accepted by the Government. Among the changes sought by Mr. McFarlane was the following: "the United States agrees *not* to utilize such [incriminating] statements

in cross examine of Mr. McFarlane should he appear as a defendant or witness in any further judicial proceedings" (emphasis added).

As part of his cooperation with the Government, Mr. McFarlane testified against his nephews, Aldridge, Lockhart and Gardenhire. On cross examination in that case, Mr. McFarlane admitted he was a member of the Jamaican Waterhouse Posse and, over a number of years, had arranged for the importation into the Kansas City area of millions of dollars worth of narcotics. This information had been first revealed to the Government as a result of Mr. McFarlane's cooperation. There was also testimony in the Aldridge case that Mr. McFarlane had supplied drugs to Tywanne Aldridge's mother. This information had not been revealed by Mr. McFarlane during his debriefing. He, in fact, denied supplying drugs to family members. Mr. Aldridge's mother is the sister of Mr. McFarlane's wife. The Court had previously learned from Mr. McFarlane and the Government that Mr. McFarlane's wife was a crack cocaine addict. Mr. McFarlane is not a drug user. He testified that narcotics was just his business.

At Mr. McFarlane's sentencing hearing, the Government filed a Motion for Downward Departure based on Mr. McFarlane's substantial assistance. Pursuant to the terms of U.S.S.G. § 1B1.8(B)(5), however, the Court considered Mr. McFarlane's lengthy history of drug trafficking when it sentenced Mr. McFarlane to 110 months in jail, which represented a 21 month departure from the high end of his guidelines. The Government claims that this violated Mr. McFarlane's Fifth Amendment guarantee against self incrimination because the information about Mr. McFarlane's drug dealing and gang membership was revealed to the Government under the pro-

tection of the parties' cooperation agreement.

## II. Discussion

### A. Terms of Agreement

■ The Court has reviewed the cooperation agreement dated March 10, 2000, which apparently was signed by Mr. McFarlane on March 15, 2000. Based upon that agreement, the Court finds that the Government did not agree to immunize Mr. McFarlane's testimony under the circumstances of this case. First, the Government stated in that letter: "as to these debriefings, it is agreed that *pursuant to U.S.S.G. § 1B1.8*, any information to be used in the sentencing of Mr. McFarlane will not include information provided to the government by Mr. McFarlane during the course of these debriefings, but will be limited to independent information and evidence in the possession of the United States prior to the initial briefing of Mr. McFarlane" (emphasis added). The Government specifically said that its agreement was pursuant to U.S.S.G. § 1B1.8. That section provides that the Court can consider self-incriminating statements when a defendant is seeking a downward departure for substantial assistance. Given that the Government's cooperation agreement was limited by U.S.S.G. § 1B1.8, it was proper for the Court to consider Mr. McFarlane's incriminating statements when deciding the amount to depart downward.

Second, the Government did not reveal to the Court any information which Mr. McFarlane gave to the Government under the protection of his cooperation agreement. Nor was the information included in the presentence investigation. *See United States v. Abanatha*, 999 F.2d 1246 (8th Cir.1993). The Court learned about Mr. McFarlane's background from his own testimony in the Tywanne Aldridge case,

testimony that Mr. McFarlane was required to provide to get a substantial assistance motion. Thus, the Government has done everything required by the cooperation agreement. In fact, the Government has vigorously argued in favor of reducing Mr. McFarlane's sentence, has sought to prevent the Court from considering any information about Mr. McFarlane's narcotic dealings, and has stated that it will waive the no appeal provision in Mr. McFarlane's plea agreement so that Mr. McFarlane can appeal his conviction based on the Court's consideration of his background.

Third, Mr. McFarlane's cooperation agreement specifically provides that "the United States reserves the right ... to utilize such statements in the cross examination of Mr. McFarlane should he appear as a defendant *or* witness in any further judicial proceedings" (emphasis added). Mr. McFarlane tried to change this provision to prevent use of incriminating statements made by him during cross examination, but the Government refused. The information about Mr. McFarlane's background came to the Court's attention as a result of cross examination in a co-defendant's trial, and the agreement does not immunize cross examination testimony. While it might be argued that only the Government may use the information, it would violate the separation of powers doctrine to permit Government agents to contract away the right of the Court to consider cross examination testimony for sentencing purposes while maintaining control over it for themselves.

### B. Appropriateness of Sentence

■ Even without considering the information about Mr. McFarlane's drug dealing, the Court believes the sentence previously imposed is the right sentence. Mr. McFarlane was the oldest member of this conspiracy, and he was the source of the money being used to fund the drug trans-

action. While Tywanne Aldridge arranged for the transaction, he could not have successfully completed it without Mr. McFarlane's money. The Court also believes it is relevant that Mr. McFarlane supplied crack cocaine to Tywanne Aldridge's mother, information that did not come from Mr. McFarlane's incriminating statements. Not only did Mr. McFarlane serve as a negative role model for his nephew, he actually contributed to the disintegration of Mr. Aldridge's family. Furthermore, while he appeared contrite at sentencing, Mr. McFarlane appeared arrogant and unremorseful when testifying in the Aldridge case. Under these circumstances, it is fundamentally unjust for Mr. McFarlane to receive a more generous downward departure for implicating his nephew.

Moreover, it is not clear that Mr. McFarlane's testimony was even necessary to achieve Mr. Aldridge's conviction. Of the three defendants that Mr. McFarlane testified against, only Mr. Aldridge was convicted, and only Mr. Aldridge was captured on tape arranging the cocaine purchase with the Government's informant. To convict the remaining two defendants, the jurors would have had to believe Mr. McFarlane's testimony about them and, apparently, the jury did not. Thus, Mr. McFarlane's testimony in the Aldridge case appeared to be of little value. While the Court did grant a 21 month downward departure in recognition of Mr. McFarlane's other cooperation, the total value of Mr. McFarlane's cooperation does not warrant a further departure.

### C. Constitution

Although the Court has denied the Government's Motion for Reconsideration on other grounds, it will briefly address the constitutional question raised by the Government. Is it a violation of a defendant's Fifth Amendment rights for a Court to consider a cooperating defendant's self-incriminating statements to determine whether or to what extent a downward departure should be granted?

The Fifth Amendment to the Constitution protects a citizen from compelled self incrimination. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Mr. McFarlane was not compelled to testify against his nephew or himself; rather he sold information to the Government, and in return, received a substantial assistance motion. His self-incriminating testimony was part of the currency of his trade. A number of courts have concluded that the protections articulated in *Kastigar* are not applicable to defendants under these circumstances. *United States v. Roberson,* 872 F.2d 597, 611–12 (5th Cir. 1989), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *United States v. Eliason,* 3 F.3d 1149, 1152–53 (7th Cir. 1993); *United States v. Camp,* 72 F.3d 759, 761 (9th Cir.1995); *United States v. Gregory,* 124 F.3d 200 1997 WL 561422 (6th Cir.1997). Such defendants have not been compelled to testify and have not been given immunity except as a matter of contract. *United States v. McHan,* 101 F.3d 1027, 1034 (4th Cir.1996), *cert. denied,* 520 U.S. 1281, 117 S.Ct. 2468, 138 L.Ed.2d 223 (1997) ("Agreements to exchange cooperation for transactional immunity are governed by traditional principles of contract law . . . .").

On the other hand, the 8th Circuit, in *United States v. Abanatha,* 999 F.2d 1246 (8th Cir.1993), said that "[t]he protection given a defendant by an immunity agreement is coextensive with the protection against self incrimination afforded by the 5th Amendment." *Abanatha* at 1249. Nonetheless, the Court believes that *Abanatha* is distinguishable because there was not a motion for downward departure in that case. The Sentencing Commission recognized this distinction in U.S.S.G. § 1B1.8(B)(5), and it makes sense. Mr. McFarlane's self-incriminating statements are not being used to punish him, the concern embodied in the Fifth Amendment. His sentence is in fact below his guideline range, and that range is the punishment that the Sentencing Commission has determined to be commensurate with his wrongdoing. While his self-incriminating statements cannot be used to impose further punishment, his statements, given voluntarily to get a better deal, may be considered when he seeks a sentence that is less than the punishment commensurate with his wrongdoing.

For all the foregoing reasons, the Government's Motion for Reconsideration (Doc. # 203) is DENIED.