NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0110n.06

No. 10-4107

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 31, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| v. | ) | |
| | ) | O P I N I O N |
| NILESH R. PATEL, | ) | |
| | ) | |
| *Defendant-Appellant.* | | |

BEFORE:   MARTIN, SUHRHEINRICH, and COLE, Circuit Judges.

COLE, Circuit Judge.  In connection with a wide-ranging federal investigation into corrupt practices associated with Cuyahoga County, Ohio, public officials, Nilesh Patel pleaded guilty to one count of conspiracy to commit bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 371.  In return for Patel's plea and his testimony in other related criminal trials, the government agreed not to bring additional charges against Patel, as well as to recommend a downward departure for substantial assistance and the lower end of the guidelines sentence.  The district court granted the downward departure, but then varied the sentence upward to an above-guidelines sentence.  We AFFIRM the sentence.

I. BACKGROUND

Beginning in July 2008, federal law enforcement engaged in a wide-ranging investigation into corruption in the Cuyahoga County government. The investigation centered on allegations that public officials demanded bribes and kickbacks from private vendors doing business with the County, particularly construction companies working on public projects. One of the people swept up in the investigation was Nilesh Patel. Patel was the Vice President of East West Construction Company ("East West"), a family-owned business in the Cleveland area. East West did construction work on Cleveland's public MetroHealth Hospital ("MetroHealth"). John Carroll, the Vice President of Facilities and Institutional Services for MetroHealth, and Carroll's assistant Thomas Greco, solicited Patel to provide bribes and other benefits in return for MetroHealth's business. Patel provided trips, home improvements, and other items to Carroll and Greco, who in turn would work with Patel to inflate East West's invoices to MetroHealth to "recover" the cost of the bribes. As a result of these actions, Patel overbilled MetroHealth for approximately $628,000. Patel kept detailed records of "the number"—the amount East West needed to recover from MetroHealth to recoup the bribes to Carroll and Greco—on an ongoing basis.

When the investigation reached MetroHealth, Patel agreed to cooperate with the government. As part of his plea agreement, Patel would plead guilty to one count of conspiracy to commit bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 371. In return for this lenience, Patel testified against Greco. In addition, Patel testified against Faisal Alatrash, an official with the Regional Transit Authority ("RTA"), about public corruption not mentioned in the plea agreement.

At Patel's sentencing, the government fulfilled all of its obligations described in the plea agreement, including moving for a downward departure for substantial assistance. The district court granted the motion for substantial assistance, resulting in a guidelines recommendation of 30 to 37 months. However, the district court, in considering the required statutory factors under 18 U.S.C. § 3553(a), applied an upward variance and sentenced Patel to 42 months in prison. In reaching this conclusion, the district court found that Patel's crime was "particularly heinous" in light of the extended length of Patel's involvement in the bribery and his central role in the illegal scheme. The district court also considered Patel's testimony in the Alatrash case, noting that Patel admitted to additional criminal conduct in connection with the RTA that was not reflected in the plea agreement. Finally, the district court considered Patel's sentence in light of the sentences of other individuals involved in the corruption investigation. In particular, the district court mentioned the sentence of Timothy Armstrong, an attorney involved in distributing kickbacks to various county officials. Patel filed a timely notice of appeal of his sentence, pursuant to a provision of his plea agreement that authorizes an appeal of an above-guidelines sentence.

## II. ANALYSIS

Patel argues on appeal that his sentence is substantively unreasonable. "[A] sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (citation omitted). Substantive unreasonableness challenges are reviewed for an abuse of discretion. *United States v. Christman*, 607 F.3d 1110, 1117 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 45 (2007)). Because the sentence was

outside of the calculated guidelines range, the sentence is entitled to neither a presumption of reasonableness nor unreasonableness. *Christman*, 607 F.3d at 1118. On review, we "must 'take into account the totality of the circumstances,' while recognizing that '[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.'" *United States v. Reilly*, 662 F.3d 754, 760-61 (6th Cir. 2011) (quoting *Gall*, 552 U.S. at 51) (alteration in the original).

As a preliminary matter, Patel challenges the district court's imposition of an upward variance, not a departure. These two phases of the sentencing process are conceptually distinct. *United States v. Grams*, 566 F.3d 683, 687 (6th Cir. 2009) (per curiam) ("While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct."). As a result, "even though 'a factor is discouraged or forbidden under the guidelines,' that 'does not automatically make [the factor] irrelevant when a court is weighing the statutory factors apart from the guidelines.'" *United States v. Davis*, 537 F.3d 611, 617 (6th Cir. 2008) (quoting *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006)) (alteration in *Davis*). *See also United States v. Stephens*, 549 F.3d 459, 466-67 (6th Cir. 2008) ("'variances from Guidelines ranges that a District Court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)' include a much broader range of discretionary decision making [than departures].") (quoting *Irizarry v. United States*, 553 U.S. 708, 715 (2008)).

The district court concluded that a variance was appropriate because the proposed sentence under the guidelines did not reflect the gravity of Patel's offense. In particular, the district court noted Patel's central role in the bribery scheme at issue, in contrast to Patel's continuing attempts

to minimize his culpability. We do not believe that the district court reached this conclusion arbitrarily or unreasonably weighed the § 3553(a) factors.

Patel contends that the district court relied on an impermissible factor when it considered his trial testimony in the Greco and Alatrash cases when imposing a sentence. In particular, Patel argues that his case is controlled by *United States v. Milan*, 398 F.3d 445 (6th Cir. 2005). In *Milan*, we concluded that the district court could not consider proffer statements in that case, as U.S.S.G. § 1B1.8 "prohibits the court from considering the defendant's own proffer statements." 398 F.3d at 456. *Milan*, however, is an upward departure case, not an upward variance case. It does not follow that the same bright line rule regarding proffered testimony applies to variances. Viewing the district court's analysis of § 3553(a) in its "totality" and in light of the broad discretion given to sentencing judges, we do not believe that the district court's discussion of Patel's trial testimony makes his sentence substantively unreasonable.

Patel also argues that, independent of § 1B1.8, the use of his proffer and trial testimony violates his Fifth Amendment rights. Patel does not cite to, nor are we aware of, any authority from this Court for this proposition. In addition, both of his authorities from other circuits, *United States v. Conway*, 81 F.3d 15 (1st Cir. 1996) and *United States v. Abanatha*, 999 F.2d 1246 (8th Cir. 1993), are readily distinguishable. In *Conway*, the district court misquoted the plea agreement when questioning the defendant about his voluntary acceptance of the plea, and left out the qualification that his statements could not be used against him "by the government." *Conway*, 81 F.3d at 17. To ensure fairness to the defendant, the First Circuit construed the plea agreement as a grant of total immunity. *Id*. Prior to reaching that result, however, the court made clear that the agreement as

written would not have prevented a district court from considering the proffered statements. *Id.* at 16-17. There was no similar confusion in this case, and the agreement Patel signed provides no blanket grant of immunity and makes clear that the district court would be the final arbiter of the proper sentence in this case. *Abanatha* involved information gained as a result of a proffer that was improperly included in the Presentence Report and used for guideline calculations. 999 F.2d at 1249. This makes *Abanatha* a departure scenario, and thus governed by the Sentencing Guidelines as discussed in *Milan*. There is nothing in either case that would suggest that Patel has an independent right to be sentenced completely without consideration of his proffered testimony, and we decline to impose such a rule here.

Finally, Patel argues that it was substantively unreasonable for the district court to equalize his sentence with Timothy Armstrong's. While the district court may have mentioned Armstrong when discussing sentencing disparities, that discussion was in the broader context of the assessment of Patel's culpability and his conduct. In reviewing the sentencing transcript in its totality, we cannot say that the district court explicitly equalized Patel's sentence with that of Armstrong. Therefore, in light of the deference afforded to the district court in sentencing, we find that the district court did not abuse its discretion.

## III. CONCLUSION

For these reasons, we AFFIRM Patel's sentence.