NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0059n.06

Case No. 22-3076

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Jan 27, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) | |
| ROBERT BURKEY, | ) | |
| Defendant - Appellant. | ) | OPINION |
|  | ) | |

Before: CLAY, GIBBONS, and McKEAGUE, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Defendant Robert Burkey appeals his sentence of sixty-three months' imprisonment for possession of a firearm as a prohibited person in violation of 18 U.S.C. § 922(g)(1), § 924(a)(2). Burkey's sentence reflects a twenty-two-month upward variance from the high end of his adjusted Guidelines range of thirty-three to forty-one months' imprisonment. Burkey argues that the upward variance was both procedurally and substantively unreasonable.

Because the district court did not commit procedural or substantive error by varying upward, we affirm Burkey's sentence.

I.

An Ohio State Highway Patrol Officer pulled over a vehicle driven by Robert Burkey for a window tint violation. After noticing THC edibles in plain view on the front passenger seat, the officer initiated a probable cause search of Burkey's car. In the backseat of the car, the officer found a backpack containing approximately one gram of cocaine and fentanyl and five grams of

heroin, a digital scale, and a box of sandwich bags; in the trunk, the officer found a loaded firearm stored underneath the spare tire. Burkey told the officers that it was his brother's firearm, and he did not know it was in the vehicle. Later, however, he stated during his presentence interview that he had moved his cousin's firearm to the trunk when he found it because he knew he could not be around firearms. Despite the discovery of the controlled substances in the backseat, Burkey was only charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), § 924(a)(2).

Burkey pled guilty to the one-count indictment via a written plea agreement. In the agreement, the parties stipulated to a base offense level of twenty under United States Sentencing Guidelines § 2K2.1(a)(4)(A). The government also agreed to recommend a within-Guidelines sentence, acknowledging that the recommendation would not bind the district court. The parties agreed that Burkey was eligible for up to a six-level reduction for accepting responsibility and cooperating with law enforcement. The plea agreement did not contain an appellate waiver.

Consistent with the plea agreement, the Presentence Investigation Report ("PSR") calculated Burkey's base offense level at twenty. However, the PSR departed from the plea agreement when it recommended a four-level enhancement for possession in connection with another felony offense because drugs were in the same vehicle as the firearm, pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Burkey objected to this enhancement. The PSR also recommended a three-level reduction due to Burkey's acceptance of responsibility. The PSR set his total offense level at twenty-one and a criminal history category V.

On January 19, 2022, the district court held a sentencing hearing. First, the court sustained Burkey's objection (to which the government agreed during the hearing) to the four-level enhancement and concluded that the enhancement did not apply because the "firearm was not in

immediate close proximity to the drugs given the fact it was in the trunk of the vehicle." DE 38, Sentencing Tr., Page ID 184. Next, the government requested a three-level reduction for Burkey's acceptance of responsibility, consistent with the PSR, which the court granted. Starting with the stipulated base offense level of twenty, the court found that Burkey's adjusted offense level was seventeen. As it agreed to do in the plea agreement, the government then moved for a three-level reduction for substantial assistance pursuant to U.S.S.G. § 5K1.1, which the court granted— adjusting the offense level to fourteen. Burkey's final adjusted Guidelines range was thirty-three to forty-one months' imprisonment.

Before the parties' arguments, the court acknowledged that it anticipated varying upward "based on [Burkey's] record and this history, particularly related to firearms offenses and violent behavior." *Id.* at Page ID 186. The court added—still before argument and allocution—that its contemplated upward variance was based on Burkey's "history and his record along with the offense conduct here in this particular case, not merely the possession of a firearm but possession of the drugs." *Id.* at Page ID 192.

During argument, defense counsel thoroughly narrated elements of Burkey's life— including early exposure to drugs due to his crack-addicted mother; his childhood environment replete with alcohol and drugs; trauma resulting from physical and sexual abuse by his mother's boyfriends; movement through various foster homes; and expulsion from school resulting from a fight in which he attempted to stand up for his assaulted cousin.

Defense counsel proceeded to discuss Burkey's progress since his 2019 release from prison. He has a close relationship with his fiancé and their year-old child, as well as with his first-grade daughter from a previous relationship. Counsel emphasized that Burkey did not contest his traffic stop or the discovery of the firearm but instead cooperated with law enforcement.

Next, Burkey spoke and took "full responsibility of everything [he] did in the past." DE 38, Sentencing Tr., Page ID 199. He asked the court to consider that his actions were influenced by his lack of a father figure, abandonment by his mother, and abuse, as well as his motivation to try to care for his siblings. He detailed how his desire to see his children grow up motivated him to stop committing crimes.

The government requested a high-end Guidelines range sentence because of Burkey's "history and characteristics"—namely, his "horrible" criminal conduct, his possession of narcotics in the same car as a gun, and his recidivism after periods of incarceration. *Id.* at Page ID 204-05.

The court then weighed the § 3553(a) factors. It first acknowledged the firearm possession and the existence of drugs in the car, noting its certainty that Burkey "was involved in the sale or trafficking of these substances by virtue of what was located in the vehicle." *Id.* at Page ID 205-06. Regarding Burkey's history and characteristics, the court found that "the nature of the convictions," or "how quickly they occur after the defendant's released from custody," is "telling." *Id.* at Page ID 206. The court highlighted Burkey's violent behavior while incarcerated and then reviewed Burkey's abusive childhood riddled with exposure to alcohol, drugs, and violence. It then mentioned Burkey's relationships with his children and his fiancé, his medical and mental issues, and his receipt of unemployment assistance before being arrested.

Regarding sentencing disparities, the court acknowledged that the average sentence length imposed for individuals with a final offense level of twenty-one and criminal history category V, excluding those receiving a 5K-1 substantial assistance reduction, was sixty-eight months. It further mentioned that Burkey's sentence would be lower given his substantial assistance.[1]

---

[1] Although it calculated Burkey's adjusted offense level—before the three-level departure for substantial assistance—at seventeen, the court mistakenly began its analysis of sentencing disparities by discussing sentencing statistics provided in the PSR, which were based on a different

The court then addressed the "need for the sentence imposed." DE 38, Sentencing Tr., at Page ID 208. It stated that Burkey's previous sentences "have really not served the [deterrent] effect" because Burkey was on supervision when he was arrested, evidence suggested that he was trafficking the drugs found in his car, and he demonstrated "deplorable" behavior while in custody. *Id.* at Page ID 209. After referencing "mitigating factors" in Burkey's favor, it concluded that those factors, weighed against Burkey's "violent behavior . . . and the rapid timing" of his offenses," justified an upward variance "just basically because of his history. We can't really resolve one case before he commits another." *Id.* at Page ID 210. Because the court determined that Burkey "has to be removed from society for a long enough period of time that maybe, just maybe, he will understand that he cannot be committing these . . . violent crimes with guns[,]" it imposed a four-level upward variance to make Burkey's offense level eighteen. *Id.* at Page ID 214. Within the Guidelines range of fifty-one to sixty-three months, it sentenced Burkey to a term of sixty-three months and three years of supervised release.

After imposing the sentence, the court recognized that it imposed a "substantial upward variance," but emphasized that, "on this record, on this history, the firearms, the willingness to use them, along with the violence while he's been incarcerated, the 63 months . . . is necessary to meet the purposes of the sentencing statute." *Id.* at Page ID 215. When the court asked if the parties had any objections pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), Burkey

---

(higher) offense level. Burkey waives this issue by failing to raise it. *Cf. United States v. Crum*, 625 F.App'x 304, 308 (6th Cir. 2015) ("We have consistently held . . . that arguments made to us for the first time in a reply brief are waived.") (quoting *Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir. 2010)). Even if we chose to address this issue, the mistake is harmless because, as discussed *infra* at p.17, this is not a typical case involving offenders with similar records and conduct, and it does not appear that the district court relied on the erroneous information. *See United States v. Adams*, 873 F.3d 512, 518 (6th Cir. 2017) ("If the evidence is false or unreliable, then the district court abused its discretion only if it based the defendant's sentence on that erroneous information.").

objected to the upward variance based on Burkey's prior criminal record and the nature of his prior offenses, as well as on his history of incarceration. He argued that the Guidelines already consider Burkey's previous criminal history when calculating both in his base offense level and criminal history category. Further, he argued that the court failed to properly consider Burkey's change in behavior and the consideration he earned from the government for his proffers, particularly given that the instant firearm possession offense did not involve violence.

In response to Burkey's objection, the court asserted that Burkey had a "willingness to have and possess firearms and to use them." DE 38, Sentencing Tr., at Page ID 221. Moreover, the court believed that Burkey "had drug trafficking paraphernalia in his vehicle[,]" and "[w]e all know what fentanyl is doing these days." *Id.* at Page ID 222. The court stated that it could "quote [him] statistics from the Northern District" regarding drug overdoses and their resulting community harm, and that Burkey had demonstrated his willingness to use firearms "quickly after being released." *Id.* The court also returned to the subject of Burkey's conduct while incarcerated, asserting that he has "rarely" seen "a defendant with as . . . frequent violations as [Burkey]'s had" when he was incarcerated. *Id.* at PageID 223.

Burkey timely appealed.

II.

Criminal sentences are reviewed for procedural and substantive reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court can commit procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* A district court substantively errs "when the district court selects the sentence arbitrarily, bases the

sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008); *see United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) ("In short, procedural review of a sentence concerns the propriety of the factors that go into a sentence; substantive review assesses the reasonableness of the sentence that results."). The abuse-of-discretion standard means a defendant's argument must go beyond "asserti[ng] that the district court should have balanced the § 3553(a) factors differently." *Sexton*, 512 F.3d at 332.

## III.

Burkey challenges the procedural and substantive reasonableness of his sentence. Because the district court did not commit procedural or substantive error when it imposed a substantial upward variance to Burkey's sentence, we affirm the sentence.

## A.

Burkey argues that the district court procedurally erred when it varied upward based on Burkey's uncharged drug possession because the court did not give him advance notice of its intent to do so. He also argues that the court procedurally erred by relying on drug fatality statistics to impose his upward variance without providing details of the statistics or advance notice of its reliance.

Although reasonable notice is required under Federal Rule of Criminal Procedure 32(h) before a sentencing court departs under the Guidelines, that notice requirement does not apply "before a sentencing court elects, on consideration of the factors in 18 U.S.C. § 3553(a), to impose a sentence that varies from the advisory Guidelines range." *United States v. Coppenger*, 775 F.3d 799, 805 (6th Cir. 2015); *see also Irizarry v. United States*, 553 U.S. 708, 714-15 (2008). However, a sentencing court is still required to "afford[] a defendant a reasonable opportunity to respond" to

a court's intent to vary based on information not contained in a presentence report. *Coppenger*, 775 F.3d at 804.

Here, Burkey's notice argument fails for two reasons. First, his presentence report acknowledged the discovery of drugs in the backseat of his car, and therefore further notice was not required. Second, he was nevertheless afforded a reasonable opportunity to respond after the court stated its intent to consider this information. Burkey's counsel did not respond specifically to the court's stated intention, but he did discuss Burkey's early exposure to drugs as a mitigating factor to reduce his sentence.

Finally, as the government argues, the court referenced statistics about drug-related fatalities *after* imposing the variance, in response to Burkey's *Bostic* objection. The court's reference to statistics was not part of its § 3553(a) balancing or its imposition of the variance. Burkey therefore did not need a reasonable time to respond to this additional context from the court. Thus, the court did not procedurally err when imposing Burkey's sentence.

## B.

Burkey argues that his case was an ordinary "mine-run," felon-in-possession matter, and that the district court substantively erred by imposing a substantial upward variance based on factors that are not unusual nor unaccounted for by the Guidelines. In response, the government contends that the district court properly considered multiple § 3553(a) factors when it imposed a sixty-three-month sentence and therefore imposed a substantively reasonable sentence. We agree with the government because, considering Burkey's cumulative criminal history, this was not a routine case and the sentence imposed was reasonable.

"Simply put, a defendant's sentence is substantively unreasonable if it is too long." *United States v. Lee,* 974 F.3d 670, 676 (6th Cir. 2020) (citing *United States v. Rayyan*, 885 F.3d 436, 442

(6th Cir. 2018)).  A substantively unreasonable sentence is one whose length is "greater than necessary" to conform to the sentencing goals set forth in 18 U.S.C. § 3553(a)(2) or is based on a disproportionate, unreasonable emphasis on some § 3553(a) factors over others.  *See Perez-Rodriguez*, 960 F.3d at 754 (6th Cir. 2020) ("If the court failed to give 'reasonable weight to each relevant factor,' the sentence that results is substantively unreasonable.") (quoting *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019)).  Relevant here, these sentencing goals include the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with . . . correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(A)-(D).  In addition to these sentencing goals, courts must consider the "nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" "the kinds of sentence and the sentencing range established for . . . the applicable category of offense . . . as set forth in the [United States Sentencing] guidelines . . ; any pertinent policy statement . . . ; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

Our substantive reasonableness analysis begins with the Guidelines range.  *See United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008).  If the district court imposes a sentence above or below the Guidelines range, then "it must provide 'sufficiently compelling' justification" for the extent of its variance.  *Lee*, 974 F.3d at 676 (quoting *Gall*, 552 U.S. at 50).  "The greater the variance, the more compelling the justification must be."  *Perez-Rodriguez,* 960 F.3d at 754 (citing *Gall*, 552 U.S. at 50).  Thus, a district court may vary upward if it "explains how the present

case is different from the typical or mine-run case that occupies the 'heartland' to which the Commission intends individual Guidelines to apply." *Id.* (quoting *Rita v. United States,* 551 U.S. 338, 351 (2007)). And "to avoid unfair disparities with the typical case, we give closer review to a variance in a mine-run case." *Id.*

The court imposed a substantial upward variance in sentencing Burkey.[2] The panel must therefore consider the court's explanation of why the case is not a typical case, but rather one deserving of such a variance. Because this case involves factors removing it from the "heartland" contemplated by the Guidelines range, and because the court appropriately weighed all statutory factors required at sentencing, we find the sentence substantively reasonable.

1.

A mine-run case is "a normal case under the governing Guidelines range, which is calculated to incorporate the crime at issue, the offense level, and the criminal history category based on prior offenses." *Perez-Rodriguez,* 960 F.3d at 754 (quoting *Rita*, 551 U.S. at 359). Burkey argues that his case is typical because the Guidelines range incorporates the instant crime as well as consideration of his prior offenses in his criminal history category and offense level. He emphasizes that his criminal history category V accounted for his prior offenses, including one qualifying as a crime of violence and therefore elevating his base offense level by six.

Burkey's instant crime and his criminal history reflect a typical felon-in-possession case, were it not for his prior institutional misconduct. His Guidelines range incorporates all of his previous offenses, including the degree of violence they involved. *See Perez-Rodriguez,* 960 F.3d at 754. And most firearms offenders have "at least one prior conviction for a violent offense." *See*

---

[2] Both parties and the court agree that the variance was "substantial." *See* DE 38, Sentencing Tr., at Page ID 215; *see also* CA6 R. 32, Redacted Appellee Br., at 35.

U.S. Sent'g Comm'n, *What do Federal Firearm Offenses Really Look Like?*, 19-20 (July 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220714_Firearms.pdf ("A majority (60.6%) of firearms offenders had at least one prior conviction for a violent offense . . . assault was the most common violent offense[.]") (hereinafter "Firearm Offense Report"). Further, the timing of his prior offenses does not make this case unique, as "federal firearms offenders in general are the most likely to recidivate," *United States v. Lightning,* 835 F.App'x 38, 42 (6th Cir. 2020), his firearm offenses were separated by two years, and the other violations between these offenses were otherwise unrelated to firearm possession or use. *See* U.S. Sent'g Comm'n, *Recidivism Among Federal Firearm Offenders*, 4 (July 2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf). Even though the district court concluded that controlled substances were in the car during Burkey's instant offense, a connection to drugs is not irregular in firearm possession cases. *See United States v. Sims*, 800 F. App'x 383, 390 (6th Cir. 2020) (Stranch, J., dissenting) (describing a "mine-run firearm possession" as "a category that routinely includes possessing a gun to protect a drug stash") (collecting cases). Because "[a] characteristic shared by 60% to 70% of offenders cannot remove [a defendant's] case from the heartland[,]" his instant offense and its circumstances appear unexceptional. *Sims*, 800 F. App'x at 389 (Stranch, J., dissenting).

However, the district court's consideration of Burkey's prison disciplinary record removes this case from the "heartland." *See Perez-Rodriguez,* 960 F.3d at 754. The Guidelines do not directly encompass Burkey's past conduct in prison, and the court sentencing Burkey for his 2015 conviction could not account for the infractions he would later commit while incarcerated between 2016 and 2019. *Cf. United States v. Thornton*, 922 F.2d 1490, 1493–94 (10th Cir. 1991) ("Because

the guidelines did not address the seriousness of the defendant's past conduct, for which there were no convictions, we held the district court properly departed to the next criminal history category in sentencing the defendant.") (citing *United States v. Keys*, 899 F.2d 983, 990-91 (10th Cir. 1990)). Burkey does not explain how regular or irregular institutional misconduct might be during incarceration, instead stating only that Burkey's youth contributed to his actions. The consideration that the court gave to Burkey's conduct while incarcerated constituted an appropriate aspect of weighing of the §3553(a) sentencing factors, as this conduct distinguishes Burkey's case from a routine set of circumstances. The panel therefore considers the variance without the "closer review" that would be given to a mine-run case. *See Perez-Rodriguez*, 960 F.3d at 754.

2.

The crux of substantive reasonableness analysis focuses on the court's weighing of the statutory sentencing factors and their connection to the sentencing goals. In Burkey's case, it is uncontested that the court considered all § 3553(a) sentencing factors. But to vary upward the court emphasized (1) Burkey's criminal history, (2) his previous institutional misconduct, (3) the efficacy of Burkey's prior sentences, and (4) the drugs found in Burkey's car during the commission of the instant offense, relative to the sentencing goals of "deterrence, protect[ing] the public, [and] reflect[ing] the seriousness of the offense." DE 38, Sentencing Tr., PageID 209. We find the upward variance adequately justified by the district court and the sentence therefore substantively reasonable.

Burkey first objects to the district court's emphasis on his criminal history. Our case law permits a district court to consider a defendant's criminal history in its analysis of the § 3553(a) factors, even though it is already incorporated in the Guidelines range. *See Lee*, 974 F.3d at 677. However, to justify a variance on this basis, the criminal history must be "uniquely problematic"

- 12 -

such that it "demonstrates a specific need for deterrence beyond that captured in the guidelines." *Id.* If that problematic history does not exist, "then some meaningful relationship between the offense of conviction and the defendant's alleged likelihood of reoffending is needed." *Id.* "Specific deterrence looks to dissuade an individual defendant from committing future crimes, while general deterrence aims to have the same effect on 'the population at large.'" *United States v. Boucher*, 937 F.3d 702, 710 (6th Cir. 2019) (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

As discussed, Burkey's criminal history itself is insufficient to demonstrate a specific need for deterrence beyond the Guidelines range because the offense level and criminal history category incorporate his prior offenses and it is not exceptional for firearm offenders to recidivate or have prior violent offenses. *See* Firearm Offense Report, 19-20. Thus, there must be "some meaningful relationship between the offense of conviction and the defendant's alleged likelihood of reoffending." *See Lee*, 974 F.3d at 677.

However, Burkey's instant gun possession conviction is still meaningfully connected to the likelihood that Burkey will attempt to possess another gun again, notwithstanding his status as a prohibited person, as his prior convictions indicate. Deterring a prohibited person from gun possession is a valid sentencing consideration. *See* 18 U.S.C. § 3553(a)(2)(B). "[A] district court commits no error by focusing on an aspect of an offense under the advisory guidelines and also in applying the § 3553(a) factors." *United States v. Baines*, 651 F. App'x 411, 414 (6th Cir. 2016) (citing *United States v. Lanning*, 633 F.3d 469, 478 (6th Cir. 2011)). Combined with its consideration of other factors, according some weight to Burkey's criminal history and its connection to his current firearm possession conviction here was not error.

Burkey also objects to the district court's reliance on the presence of controlled substances in Burkey's car. However, the presence of controlled substances in Burkey's car was appropriately considered here because the district court, within its discretion, found possession of the drugs by a preponderance of the evidence,[3] and "a district court can consider uncharged or dismissed conduct for sentencing purposes." *United States v. Haj-Hamed*, 549 F.3d 1020, 1026 (6th Cir. 2008) (citing *United States v. Mendez*, 498 F.3d 423, 426-27 (6th Cir. 2007). Because Burkey has no criminal history involving trafficking or possession of narcotics and was not charged here with such crimes, however, the court had a less compelling justification to impose a variance based on Burkey's drug possession than, for instance, possession suggesting a likelihood of reoffending. *See, e.g. United States v. Robinson*, 892 F.3d 209, 214 (6th Cir. 2018) (upholding an upward variance for possession with intent to distribute fentanyl because the defendant "ha[d] proven over many . . . years that he would continue to distribute opioids absent a very long period of incarceration" (internal quotation marks and record citation omitted)). Nevertheless, drug possession connects to the need for the sentence to reflect the seriousness of the offense, and the district court considered the drug possession as "part and parcel" of Burkey's offense. *See* DE 38, Sentencing Tr., Page ID 184; *cf. United States v. Cross*, 121 F.3d 234, 239 (6th Cir. 1997) (permitting district court's upward departure based on conduct covered by dismissed count with a relationship to the charged offense). Accordingly, the district court did not err in considering the controlled substances in its sentencing calculation.

---

[3] The court also notes that it "ha[d] no doubt that [Burkey] was involved in the sale or trafficking of [controlled] substances by virtue of what was located in the vehicle." DE 38, Sentencing Tr., Page ID 206. Later, it states that "there is evidence suggesting [Burkey] was trafficking these substances, the heroin, the cocaine, fentanyl." *Id.* at Page ID 209. It is not clear, then, if the first reference to trafficking concerned Burkey's activities in general, or whether the court meant to conclude that it found that Burkey was engaged in drug trafficking during the *instant* gun-possession offense.

Next, Burkey contends that the court placed undue weight on Burkey's previous conduct while incarcerated. However, the district court appropriately emphasized that misbehavior in prison is relevant to Burkey's future behavior when serving on supervised release or after his sentence is complete. Indeed, Burkey's PSR reflected multiple instances of misbehavior in prison, including possession of contraband, poor treatment of correctional officers, and fights with other inmates. This conduct has been considered supportive of a variance when combined with other relevant considerations. For instance, in *United States v. Baines*, this court affirmed an upward variance based on the defendant's poor prison disciplinary record, gang affiliation, and other circumstances surrounding his arrest. 651 F. App'x 411, 412, 414 (6th Cir. 2016) (observing that "Baines's inability 'to comply with the rules in prison' reinforced his pattern of rule breaking that extended beyond the prison walls."); *cf. United States v. Johnson*, 26 F.4th 726, 739 (6th Cir. 2022) (indicating that the defendant "ha[d] not incurred any convictions or meaningful infractions while in prison" as support for finding an upward variance unreasonable).

Finally, Burkey argues that his imposed sentence was unfairly disparate, not only to the average sentences imposed on offenders with similar records who have been guilty of similar conduct, but also to offenders who have received substantial assistance reductions. However, as discussed, this is not a routine case involving offenders with similar records and conduct. And applying a substantial assistance reduction does not prevent a sentencing judge from varying upward based on other permissible sentencing considerations. *See, e.g., United States v. Patel*, 457 F. App'x 549, 552 (6th Cir. 2012); *United States v. Stoutermire,* 516 F. App'x 583, 586 (6th Cir. 2013).

Imposing a substantial upward variance based exclusively on any of these factors may have been insufficiently "compelling" to warrant the twenty-two-month variance. Indeed, basing an

upward variance solely on Burkey's criminal history or the uncharged drug possession could be considered inconsistent with treating typical cases the same, as these aspects of his case were not unusual. *See, e.g., United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("[O]n appellate review, we will view as inherently suspect a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead, reflects attributes common to all defendants."). And uniquely poor institutional conduct alone may not support a four-level variance moving Burkey's sentence far from the average term of imprisonment for a federal firearm offender. *See* Firearm Offense Report at 17 (noting average sentence length for federal firearm offender in 2021 was forty-two months). However, the district court's application of the § 3553(a) factors and the weight given to them, combined with the substantial deference that a sentencing judge is afforded, supports a finding that the final imposed sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *See Gall,* 552 U.S. at 51("[T]hat the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

Since Burkey's case was not a routine matter and the district court reasonably weighed its considerations of the statutory sentencing factors, its justifications are "sufficiently compelling to support the degree of the variance" imposed by the district court. *Gall*, 552 U.S. at 50. We conclude that the district court imposed a substantively reasonable sentence.

IV.

Because the district court did not procedurally or substantively err in imposing Burkey's sentence, we affirm the sentence.